**PHILIP LUND, Plaintiff**

v.

**CUNARD LINE LIMITED, Defendant and Third-Party Plaintiff**

v.

**VIRGIN ISLANDS PORT AUTHORITY, Third-Party Defendant**

Civil No. 184-1973

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 6, 1975

YOUNG, *District Judge*

MEMORANDUM OPINION AND ORDER

On March 22, 1975, a six-person jury returned a verdict of $180,675.00 in favor of Plaintiff Philip Lund and

against Defendant Cunard Lines, Ltd. (herein "Cunard"). This case involves a maritime tort. The jury, in answer to questions in a special verdict, held that the Cunard ship ADVENTURER was not unseaworthy but that Cunard was guilty of negligence. The jury also determined that Lund was not guilty of contributory negligence nor was Third-Party Defendant Virgin Islands Port Authority (herein "Port Authority") guilty of any negligence. Cunard orally moved for a judgment notwithstanding the verdict (j.n.o.v.) pursuant to Fed. R. Civ. P. 50(b) or, in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59 after the verdict was returned. Cunard preserved its right to move for a j.n.o.v. by moving for a directed verdict at the close of Lund's case and again at the end of the trial. A written motion was filed renewing Cunard's oral motion on April 1, 1975, and a hearing was held on the motion May 21, 1975.

## I

### FACTS

Lund, a pilot for the Charlotte Amalie Harbor, was injured while boarding Cunard's ship ADVENTURER. There was testimony by Lund and others on the pilot boat "Jellice Swan" that the ship was speeding at the time he was boarding, that the pilot ladder was hung in the center of the boarding door, obstructing entry, and that a crew member of the ship was standing in the doorway so as to block entry. The captain of the ADVENTURER denied that the ship was travelling at an excessive speed. The crew of the ADVENTURER, who were at the boarding port, testified that the ladder was properly hung and that no one was obstructing Lund's entrance. Uncontroverted testimony established that the pilot boat, which is operated by the Port Authority, was exceeding the speed limit estab-

11

lished for the Charlotte Amalie Harbor while approaching the ADVENTURER. Lund apparently stepped from the pilot boat to the boarding ladder while the pilot boat was in the trough of a wave, for the pilot boat "followed him up the ladder" and caught his foot between itself and the ship. As a result of the accident, Lund lost portions of three toes including the great toe. His medical expenses were $500.00. Lund made no claim for loss of future earnings. He claimed damages for future pain and suffering, loss of enjoyment of life and humiliation. Lund is able to continue at his job as a harbor pilot, play golf and play tennis, but he testified that there is some impairment of his movement and that he suffers some continuing pain.

## II

### JUDGMENT NOTWITHSTANDING THE VERDICT

A motion for a j.n.o.v. presents the same question as is presented by a motion for a directed verdict. C. Wright and A. Miller, Federal Practice and Procedure § 2524. The court must view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence. Applying that standard to this case, I find that there was sufficient evidence as to the negligence of Cunard to raise a question for the jury. Further, reasonable inferences could be drawn from the evidence that Lund was not guilty of any contributory negligence that proximately caused his injury and that the acts of the Port Authority in operating the Jellice Swan did not proximately cause Lund's injury. Therefore, Cunard's motion for a judgment notwithstanding the verdict will be denied.

## III

### NEW TRIAL

██ Cunard alleges several grounds on which a new trial should be granted. The first is that the special verdict of the jury is irreconcilably inconsistent in finding negligence on the part of Cunard but no unseaworthiness. While it is true that the concept of unseaworthiness has all but enveloped the concept of negligence [G. Gilmore and C. Black, Admiralty § 6-55 at 364 (1957)], the Supreme Court has ruled that a single separate act may constitute operative negligence, though it may not necessarily create a condition of unseaworthiness. Usner v. Luckenback Overseas Corp., 400 U.S. 494 (1971). That case was extended in Conceicao v. New Jersey Export Marine Carpenters, Inc., 508 F.2d 437 (2nd Cir. 1974), to cover the case where the single act of negligence was performed by a member of the crew rather than a longshoreman as was the case in Usner. I find this case to come within the single act of negligence exception to unseaworthiness rather than the rule of Bernardini v. Rederi A/B Saturnus, No. 113-74 (2nd Cir. filed March 11, 1975). The speed of the ADVENTURER could constitute operative negligence on the part of the captain but would not be a condition that would make the ship unseaworthy.

██ The attorney for Lund made a "per diem" argument for pain and suffering broken down to an hourly basis. A cautionary instruction was given by the Court that such argument was a way of presenting the case by counsel but was not to be considered evidence. Cunard objected to such form of argument and asserts that there was error in allowing Lund's attorney to make such an argument. I am of the opinion that whether or not to allow a "per diem" argument is a matter to be decided in the discretion of the court. Bowers v. Pennsylvania Ry. Co.,

13

182 F.Supp. 756 (D. Del.) aff'd., 281 F.2d 953 (3rd Cir. 1960). This is the rule in the Fifth Circuit also, Baron Tube Co. v. Transportation Ins. Co., 365 F.2d 858 (5th Cir. 1966). In Baron Tube Co. the Court noted that the unit of time argument is a powerful form of advocacy but that with controls, such as the control the court has over excessive verdicts, it is permissible. It is a risky form of advocacy for plaintiffs because it gives defendants a peg upon which to hang their claim of excessiveness of the verdict. See, infra. There was no error in allowing Lund's attorney to make a unit of time argument.

Cunard also argues that the verdict of the jury on all liability questions and on damages is against the weight of the evidence requiring a new trial pursuant to Rule 59(a). Rule 59(a) provides that in an action in which there has been a trial by jury, a new trial may be granted for any of the reasons for which new trials have heretofore been granted in actions at law in the Courts of the United States. Full respect must be given the jury's findings and the judge must be careful not to usurp the prime function of the jury as triers of facts. Lind v. Schenley Industries, Inc., 278 F.2d 76 (3rd Cir. 1960). If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been made, he should grant a new trial. Wright and Miller, supra, 2806. Though the Lind case establishes a strict standard of review of the evidence in deciding a new trial motion, it is less strict than when the court is deciding to enter a judgment as a matter of law. There may be conflicting evidence on a point and the court can still be justified in ordering a new trial.

Reviewing the evidence I am left with the firm conviction that a mistake has been made. I do not believe that the ADVENTURER was travelling at an excessive rate of speed. The ship was not behind schedule, the log

14

entries indicate normal speed and the ship's captain testified the ship was travelling at a normal rate. The testimony as to speed comes from persons who viewed the ship from a moving platform, the pilot boat, which was admittedly speeding in order to reach the ADVENTURER. I find the evidence of improper rigging not believable, and further, there was no evidence to show that there was any proximate relation between the rigging of the ladder, the height differential between the deck of the pilot boat and the shell door through which the pilot entered, the obstruction of the entryway and the accident. Lund's foot was trapped while his foot was still on the rung of the ladder where it was initially or secondarily placed.

I also find the determination that Lund was not guilty of contributory negligence to be against the overwhelming weight of the evidence. The facts of the accident lead to the inevitable conclusion that Lund stepped off the pilot boat while it was in the trough of a wave rather than stepping off when it was on a crest. I am not prepared to say at this time that this is contributory negligence as a matter of law, but I am convinced that the jury's determination of no contributory negligence is a mistake.

The jury found that the Port Authority was not guilty of negligence. In view of the uncontroverted evidence that the pilot boat was speeding, this determination is difficult to understand. The jury could have determined that there was no causal relation between the speed of the pilot boat and the injury. This is inconsistent with the theory that the ADVENTURER was speeding and that such speed caused the accident. The pilot boat had no duty to attempt to place a pilot on board if a ship is travelling at an excessive rate, in fact they would be obligated not to make such an attempt. Since I do not believe the ADVENTURER was travelling at an excessive speed at the time of the injury, I

do not believe the Jellice Swan was speeding during the boarding. However, her excessive speed, conceded by her crew, just prior to the 180° turn to come alongside the Cunard liner, could well have caused the dangerous boarding conditions by reason of her own bow wave striking the liner's hull at the location of the shell door. I must set aside the jury's verdict as to the Port Authority and order a new trial as to its liability.

■ The last issue raised by Cunard is the excessiveness of the verdict. Various phrases are used in cases on excessive verdicts. The Third Circuit has stated the test as follows:

... [a]ny claim that the verdict has been excessive requires a trial court to decide no more than whether or not the jury has reached a result which could rationally and dispassionately be reached by laymen on the basis of evidence relevant to the several categories of legally recoverable damage. Lebeck v. William A. Jarvis, Inc., 250 F.2d 285 (3rd Cir. 1957).

It is difficult to say what is fair compensation for any injury that results in dismemberment, disfigurement, severe pain for several days after the injury and a continuation of moderate pain and discomfort thereafter to the present and some permanent disability. Verdicts from other jurisdictions in similar personal injury actions indicate that this verdict is unreasonably large. Mitchell v. Reading and Bates Exploration Co., 239 F.Supp. 516 (D. Tex. 1965) (Court awarded $10,000.00 pain and suffering for loss of three toes); Turtenwald v. Aetna Cas. & Sur. Co., 55 Wis.2d 659, 201 N.W.2d 1 (1972) (Jury award of $27,500.00 for loss of big toe to 18 year old); Rommell v. U.S. Steel Corp., 168 A.2d 437 (N.J. 1961) ($75,000.00 for loss of all toes on one foot excessive, new trial ordered). Lund has provided no other cases for comparison.

■ I have carefully considered Lund's subjective testi-

mony of his pain and suffering and the objective testimony of medical observers who witnessed his pain and suffering. I comprehend the humiliation which Lund sincerely feels when he appears in the presence of others without his shoes on. I further understand that Lund has experienced, and will forever continue to do so, some impairment of his ability to engage in and to enjoy certain physical sports, such as tennis and golf. However, I do not find that the award of $180,675.00 could have been rationally and dispassionately reached as being a fair and just award for these considerations. Were the size of the verdict my only concern, I would consider suggesting a voluntary remittitur by plaintiff or suffer a new trial, but since I have found the jury's verdict to be against the strong weight of the evidence on all issues, there is no reason to establish what I would consider to be an appropriate recovery and a fair and just compensation to Lund. Furthermore, proceeding by way of suggesting a remittitur to delete any excessive portion of recovery would be to ignore the issues of the contributory negligence of Lund and the negligence of the Port Authority.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is hereby

ORDERED:

1. That Defendant Cunard Lines, Ltd.'s Motion for a Judgment Notwithstanding the Verdict as to Plaintiff Philip Lund or, in the alternative, as to the Third-Party Defendant Virgin Islands Port Authority be DENIED; and

2. That Defendant Cunard Lines, Ltd.'s Motion for a new trial as to all parties and all issues be GRANTED; and further

3. That the new trial be scheduled to commence July 21, 1975.