06-3782-cv
Hicks v. Baines

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: April 13, 2009     Decided: February 2, 2010)

Docket No. 06-3782-cv

- - - - - - - - - - - - - - - - - - - - -x

DWIGHT D. HICKS, ANTONIO MELENDEZ, and
JAMES E. SMITH,

                    Plaintiffs-Appellants,

        - v.-                                06-3782-cv

TOMMY E. BAINES, individually and in his
official capacity,

                    Defendant-Appellee,

JOHN A. JOHNSON, in his official
capacity as Commissioner of the New York
State Division for Youth and New York
State Office of Children and Family
Services,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - -x

        Before:        JACOBS, Chief Judge, and CABRANES,
                       Circuit Judge.[*]

_____

     [*] The Honorable Sonia Sotomayor, originally a member of
the panel, was elevated to the Supreme Court on August 8,
2009.  The two remaining members of the panel, who are in
agreement, have determined the matter.  See 28 U.S.C. 46(d);

Plaintiffs Dwight Hicks, Antonio Melendez, and James Smith sued defendants Tommy Baines and John Johnson for retaliation under 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1981a, and the New York State Human Rights Law. They now appeal from the judgment of the United States District Court for the Western District of New York (Curtin, J.), awarding summary judgment for defendants on all claims. We vacate and remand in part and affirm in part.

DAVID J. SEEGER, Law Office of David J. Seeger, Buffalo, New York, for Appellants.

WILLIAM R. HITES, Law Office of William Hites, Buffalo, New York, for Appellee.

DENNIS JACOBS, Chief Judge:

Prior to this lawsuit, defendant Tommy Baines, a supervisor in a residential youth facility of the State of New York, was disciplined by his employer for having engaged in a campaign of racial discrimination against Mark Pasternak, an employee he supervised. Plaintiffs Dwight Hicks, Antonio Melendez, and James Smith--coworkers of Pasternak who were also supervised by Baines--cooperated in

Internal Operating Procedure E, 2d Cir. Local Rules; United States v. Desimone, 140 F.3d 457 (2d Cir. 1998).

the investigations and proceedings, and now allege that Baines threatened to retaliate against them, and did.

Title VII's anti-retaliation provision makes it unlawful "for an employer to discriminate against any . . . employee[] . . . because [that employee] opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). As that provision has been recently interpreted by the Supreme Court, retaliation is unlawful when the retaliatory acts were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).

Plaintiffs sued Baines[1] under 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1981a, and the New York State Human Rights Law, see N.Y. Exec. Law § 296, alleging seven categories of retaliatory conduct: sabotage of the workplace

_____

[1] Plaintiffs also named as a defendant John Johnson, Commissioner of the New York State Division for Youth and New York State Office of Children and Family Services. The parties have since agreed to dismiss Johnson from this appeal.

to create spurious grounds for berating plaintiffs and imposing discipline on them, punitive schedule changes, "misplaced" documents, threats, false and adverse memoranda, name-calling, and refusal to pay the facility's bills.

The United States District Court for the Western District of New York (Curtin, J.) awarded summary judgment in favor of defendants on all claims. The district court ruled that plaintiffs' evidence (which consisted principally of their affidavits in opposition to defendants' motions for summary judgment) was conclusory and that it did not amount to a meaningful change in the terms and conditions of employment. Plaintiffs appeal.

We vacate and remand as to one of the workplace sabotage and the several punitive scheduling claims; as to the remaining claims, we affirm.[2]

**I**

---

[2] It appears from the record that Melendez died sometime during discovery (but before he could be deposed or provide an affidavit). Neither the record on appeal nor at the district court make clear exactly when in the proceedings Melendez died, nor what was done about his involvement in this litigation. On remand, the district court should apply Federal Rule of Civil Procedure 25(a)(1) and either dismiss the case as concerns Melendez or take other appropriate action.

4

Because this appeal comes to us after a grant of summary judgment to defendants, we consider the facts in the light most favorable to plaintiffs. See Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002).

Baines has been employed by the New York State Office of Children and Family Services ("OCFS") since 1977. "OCFS is dedicated to improving the integration of services for New York's children, youth, families and vulnerable populations; to promoting their development; and to protecting them from violence, neglect, abuse and abandonment." About the New York State Office of Children and Family Services (OCFS), http://www.ocfs.state.ny.us /main/about/. These objectives are achieved by "provid[ing] a system of family support, juvenile justice, child care and child welfare services that promote the safety and well-being of children and adults." Id.

Baines worked his way up at OCFS over 18 years, from ground-level counselor trainee to Director of two secure residential facilities in Buffalo, New York: the Community

Residential Home and the Evening Reporting Center ("ERC"). Among those he supervised are Mark Pasternak (the victim of Baines's prior campaign of racial discrimination) and the three plaintiffs, all of whom worked at the Buffalo facilities as Youth Division Aides ("YDA"). Their responsibilities included supervising and counseling the residents, helping to integrate them back into society. Baines, Smith, and Hicks are African-American; Melendez (now deceased) was Hispanic; Pasternak is white.

In 1995, soon after becoming Director, Baines started a campaign of racial discrimination against Pasternak. According to complaints filed by Pasternak and corroborated by plaintiffs, Baines referred to Pasternak in conversations, voicemails, and official memoranda as "White Boy," "That White Motherf--," "That F--ing White Boy," "White Cracker Motherf--," "Pollok," and "Pasterat." Baines encouraged plaintiffs to discredit Pasternak to other OCFS supervisors and to band together against the "White Boy." Baines told plaintiffs that Pasternak's complaints against him could result in the closing of facilities and loss of

their jobs.

In early 1996, Pasternak filed a formal misconduct complaint against Baines, and OCFS launched an official investigation. In November 1997, plaintiffs participated in the investigation by making written and oral statements about Baines's treatment of Pasternak. They did so despite their expressed fear that Baines would retaliate.

Plaintiffs' fears were not unfounded. After Baines learned that other employees--including plaintiffs--were cooperating with the investigation, he told staff members that Pasternak was a "rat" and that he would find out who else "ratted" on him and "take care" of those people. In June 1998, the OCFS investigators found Baines guilty of misconduct. He was fined $2000 and received a formal Letter of Reprimand, but he remains as Director, and supervisor of Pasternak and plaintiffs.

Pasternak afterward brought a Worker's Compensation claim based on the stress and anxiety he suffered as a result of Baines's conduct. Plaintiffs testified against Baines at the hearing, and Baines knew it. In August 2000,

Pasternak prevailed before the New York Workers' Compensation Board.[3]

Following plaintiffs' participation in the OCFS investigation and the Workers' Compensation hearing, Baines allegedly engaged in multifarious acts of retaliation to punish plaintiffs for their cooperation in those proceedings.  On May 5, 1999, plaintiffs filed this lawsuit alleging unlawful retaliation under 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1981a, and the New York State Human Rights Law.  Plaintiffs assert seven categories of such retaliatory conduct, which are analyzed below.

At the close of discovery, the district court granted Baines's motion for summary judgment on all claims.  Hicks v. Baines, No. 99-civ-0315C, 2006 WL 1994808 (W.D.N.Y. July 14, 2006).  The court reasoned that "plaintiffs' affidavits contain only conclusory allegations" that did not "result[] in any meaningful change in the terms and conditions of

_____

[3] In a separate Title VII lawsuit filed by Pasternak against Baines, a jury found for Pasternak and awarded him $150,000 in compensatory damages. See Pasternak v. Baines, No. 00-Civ-369, 2008 WL 2019812 (W.D.N.Y. May 8, 2008).

8

plaintiffs' employment." Id. at *6. In so holding, however, the district court failed to apply the then-recent, but unquestionably controlling, Supreme Court decision in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), which broadened the scope of Title VII's anti-retaliation protection.[4]

This appeal followed. We now vacate and remand in part and affirm in part.

**II**

All of plaintiffs' retaliation claims are analyzed pursuant to Title VII principles. See Patterson v. County of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause."); Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1177 (2d Cir.

---

[4] White was decided approximately three weeks before the district court's opinion was filed; a review of the district court docket sheet suggests that no party brought White to the court's attention.

1996) ("We consider [plaintiff's] state law claims in tandem with her Title VII claims because New York courts rely on federal law when determining claims under the New York [State] Human Rights Law."). Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII also includes an anti-retaliation provision which makes it unlawful "for an employer to discriminate against any . . . employee[] or applicant[] . . . because [that individual] opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII investigation or proceeding. 42 U.S.C. § 2000e-3(a). This anti-retaliation provision is intended to further the goals of the anti-discrimination provision "by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees." White, 548 U.S. at 63.

"Retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis." Jute v. Hamilton

10

Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  First, the plaintiff must establish a prima facie case of retaliation by showing: "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'"  Jute, 420 F.3d at 173 (quoting McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001)).  The plaintiff's burden in this regard is "de minimis," and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive."  Id. (internal quotation marks omitted).

If the plaintiff sustains this initial burden, "a presumption of retaliation arises."  Id.  The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action."  Id.  If so, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action."  Id.  A plaintiff can sustain

this burden by proving that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990).

Principally (though not solely) at issue in this appeal is the meaning of "adverse employment action" in the context of the plaintiff's prima facie case of retaliation. White held that Title VII's anti-retaliation provision applies broadly to "employer actions that would have been materially adverse to a reasonable employee or job applicant." 548 U.S. at 57. Actions are "materially adverse" if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id.

Several principles follow. First, it is now clear that Title VII's anti-discrimination and anti-retaliation provisions "are not coterminous"; anti-retaliation protection is broader and "extends beyond workplace-related or employment-related retaliatory acts and harm." Id. at

67. Prior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment, e.g., Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004); Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000), no longer represent the state of the law. Accord Kessler v. Westchester County Dep't of Social Servs., 461 F.3d 199, 207 (2d Cir. 2006) (noting that White "announced a different standard").

Second, by requiring a showing of *material* adversity, White preserves the principle that Title VII "does not set forth 'a general civility code for the American workplace.'" White, 548 U.S. at 68 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). "[P]etty slights or minor annoyances that often take place at work and that all employees experience" do not constitute actionable retaliation. Id. Thus, "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 67.

Third, by considering the perspective of a *reasonable* employee, White bespeaks an objective standard. Id. at 68-69. The standard may be objective, but "[c]ontext matters." Id. at 69. "'The real social impact of workplace behavior

often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'" Id. at 69 (quoting Oncale, 523 U.S. at 81-82). Therefore, "an act that would be immaterial in some situations is material in others." Id. at 69 (internal quotation marks omitted). For example, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." Id. And of course context can diminish as well as enlarge material effect.

Fourth, in determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently "substantial in gross" as to be actionable. See Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 227 (2d Cir. 2006) ("[T]his ridicule was considered a part of a larger campaign of harassment which though trivial in detail may have been substantial in gross, and therefore was actionable." (internal quotation marks omitted)).

14

With these principles in mind, we turn to the district court's decision.

**III**

We review <u>de novo</u> the district court's grant of summary judgment. <u>Miller v. Wolpoff & Abramson, L.L.P.</u>, 321 F.3d 292, 300 (2d Cir. 2003). "Summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." <u>Id.</u>; <u>see also</u> Fed. R. Civ. P. 56(c). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted).

As set forth above, our analysis begins with plaintiffs' <u>de minimis</u> burden to establish a <u>prima facie</u> case of unlawful retaliation: (1) participation in a protected activity; (2) that Baines knew of their

15

participation in that protected activity; (3) that they suffered an adverse employment action; and (4) that there exists a causal relationship between the protected activity and the adverse employment action. Cf. Jute, 420 F.3d at 173.

For purposes of summary judgment only, Baines does not contest that plaintiffs satisfy the first element, and plaintiffs' affidavits are sufficient to establish the second, see Hicks Aff. ¶ 21; Smith Aff. ¶ 21. The third element is the main subject of this appeal.

As to the third element of plaintiffs' prima facie case, the district court dismissed plaintiffs' claims after concluding that their "affidavits contain only conclusory allegations of job sabotage, schedule changes, misplacing of documents, idle threats, and unwarranted counseling memoranda, none of which resulted in any meaningful change in the terms and conditions of plaintiffs' employment." Hicks v. Baines, 2006 WL 1994808 at *6. This reasoning suggests two independent justifications for dismissal: (A) the insufficiency of conclusory statements in opposing a motion for summary judgment, and (B) Title VII principles of anti-retaliation. Plaintiffs also raise on appeal two

16

allegations of retaliation outlined in their affidavits filed in opposition to Baines's motion for summary judgment but not directly addressed by the district court: Baines called Hicks "Hick" in memos and in the ERC log book; and Baines intentionally failed to pay the food and utility bills, thereby forcing plaintiffs to pay out of their own pockets, or deal with hungry residents, and dunning calls and letters.[5]

As to many of these claims, we affirm on the ground that plaintiffs' evidence is too conclusory to withstand summary judgment. But as to one claim of workplace sabotage and the several punitive scheduling claims, plaintiffs' evidence is sufficient both to survive summary judgment and to satisfy the third element of their prima facie burden of showing an adverse employment action under White. Accordingly, as to these claims we vacate and remand.

---

[5] In addition, plaintiffs make purely conclusory allegations on appeal that Baines retaliated against them by ordering them to do work outside of their regular job responsibilities and by improperly docking their pay. There is no further explanation, analysis, or developed argument. See, e.g., Appellants' Br. at 7-8. Accordingly, these arguments are forfeited on appeal. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered [forfeited] and normally will not be addressed on appeal.").

17

**IV**

The following claims were properly dismissed as too conclusory to survive summary judgment:

**Workplace Sabotage.** In their affidavits opposing summary judgment, plaintiffs make the following claims of workplace sabotage:

- "Defendant Baines, on numerous occasions, entered the E.R.C. after [Hicks] and his fellow Plaintiffs had secured the facility for the night to purposefully disturb the facility and compromise the security of the site in an effort to not only cause a poor reflection on [Hicks] and his fellow Plaintiffs' job performances in securing the building, but also to further torment, harass and retaliate against them." Hicks Aff. ¶ 29; see also Smith Aff. ¶ 28 (same, but substitute "Smith" for "Hicks" in the alterations).

- "On or about May 9, 1998, [Hicks] discovered that the facility's security had been compromised during the night by someone having the security codes and keys to the building (upon information and belief, Defendant Baines was in fact entering the facility during non-operational hours)." Hicks Aff. ¶ 37; see also Smith Aff. ¶ 36 (same).

- "[O]n or about May 9, 1998, [Hicks] discovered dirty dishes in the sink and a knife missing from the locked knife drawer. Upon information and belief, Defendant Baines removed the knife from the drawer to torment, retaliate and add stress to [Hicks's] work shifts as the youths in [his] charge could and at times did become violent." Hicks Aff. ¶ 38; see also Smith Aff. ¶ 37.

18

As to the general claim of sabotage: Plaintiffs' affidavits on this point lack specifics and are conclusory; a party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove. See Fletcher, 68 F.3d at 1456 ("[C]onclusory allegations . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." (internal quotation marks omitted)).

As to the compromised security system claim: Plaintiffs do not assert that it was *Baines* who had compromised the facility's security; instead, they suggest only that "someone having the security codes and keys to the building" was responsible. Plaintiffs then fail to offer evidence as to which employees had the codes and keys, leaving purely to speculation whether Baines was responsible. Cf. Fletcher, 68 F.3d at 1456.

As to the dirty dishes and missing knife claim: On summary judgment, "[a] supporting or opposing affidavit must be made on personal knowledge." Fed. R. Civ. P. 56(e)(1). That requirement "is not satisfied by assertions made 'on information and belief.'" SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 138 (2d Cir. 2009) (internal

19

quotation marks omitted).  Plaintiffs' assertion that Baines took the knife to retaliate against them--which is explicitly grounded only on their "information and belief"-- is therefore insufficient.  Plaintiffs do not allege that Baines was responsible for the dirty dishes, and it would not help if they did.

**Misplaced Documents.**  Plaintiffs claim that Baines intentionally "misplaced" several key documents.  Of the fifteen examples cited in the affidavits, nine deal with Pasternak, who is not a plaintiff in this lawsuit.  The other six examples are too conclusory to survive summary judgment.  One claims no consequence for any plaintiff (or for plaintiffs generally), see Hicks Aff. ¶ 42 ("From July of 1995, Defendant Baines intentionally caused several Fire Safety Reports, ACA documents, vouchers, utility statements and bills, medical bills and log books to be 'misplaced.'"); and the others refer to seemingly innocuous acts that are not plausibly attributable to Baines, even in light of his professed retaliatory intentions.  See, e.g., id. ("On or about May 23, 1998, Plaintiff Smith discovered that the curfew log was missing."); id. ("On or about February 12, 1998, Defendant Baines requested the 'running inventory

20

list' from Plaintiff Melendez.  When Plaintiff Melendez looked in the file cabinet where the list was kept, he discovered that the documents were missing.").  Accordingly, we affirm summary judgment as to this category of claims.

**Physical Threats**.  Plaintiffs make no argument on appeal as to why their claim of physical threats should not have been dismissed as conclusory.  This argument is therefore forfeited.  See Norton, 145 F.3d at 117.

**False Counseling Memoranda**.  Plaintiffs contend that Baines submitted memoranda in which he noted various falsehoods regarding plaintiffs' work.  We agree with the district court that these allegations are too conclusory to withstand summary judgment.  For example, Smith's affidavit states that "[o]n or about April 4, 1998, Defendant Baines did draft and file . . . a false counseling memorandum against deponent regarding time and attendance," Smith Aff. ¶ 34; that "[o]n or about August 7, 1998, Defendant Baines drafted and filed . . . three false counseling memoranda against deponent regarding supposed insubordination," id. ¶ 39; and that his pay was docked as a result, id. ¶ 42. Smith's affidavit, however, explains neither the circumstances leading up to the memoranda nor why the

21

memoranda were false.

**Name-calling.** Hicks testified at his deposition and swore in his affidavit that Baines referred to him as "Hick" in various log books and hand-written notes. Hicks Aff. ¶ 41. But this is an action claiming retaliation: Whatever "Hick" might otherwise amount to, neither the deposition testimony nor the affidavit explains whether Baines started calling him "Hick" before Hicks had cooperated in the Pasternak investigation.

**Refusal to Pay the Facility's Bills.** Plaintiffs contend that Baines intentionally failed to pay the ERC's food and utility accounts, and that plaintiffs were therefore required to pay for the residents' meals themselves (which they apparently did on February 18, 1998). Hicks Aff. ¶ 44; Smith Aff. ¶ 45. Plaintiffs also claim that Baines's refusal to pay the bills required plaintiffs to handle the vendors' demands. Plaintiffs' affidavits are too conclusory to survive summary judgment on this issue. There is no suggestion, much less evidence, that Baines was responsible for paying the bills, or (if he was) that Baines failed to pay the bills *intentionally*, or (if he did) that the consequences would fall chiefly on plaintiffs rather

than on Baines himself.

**V**

One of plaintiffs' workplace sabotage claims, and the several punitive scheduling claims, are sufficient to survive summary judgment and to satisfy the third element of their prima facie burden of showing an adverse employment action under White.

**Workplace Sabotage.** Plaintiffs allege that "[o]n or about July 31, 1998, Defendant Baines purposely left the computer room window ajar thereby prohibiting [Hicks] and his fellow Plaintiffs from setting the facility alarm as Plaintiffs did not have keys to the computer room door. [Hicks] and his fellow Plaintiffs were then reprimanded for failing to activate the facility alarm." Hicks Aff. ¶ 39; Smith Aff. ¶ 38 (same, but substitute "Smith" for "Hicks" in the alterations). This claim withstands scrutiny under generally applicable principles of summary judgment. Context and averments demonstrate that this is no mere allegation that a window was left open. The open window prevented the security system from being armed. The window was behind a locked door; Baines had the key and knew that

no one else did.  The inability to arm the security system created risks that a vulnerable resident might wander out or become the victim of an intruder.  These risks furnished grounds for discipline against whomever failed to arm the security system.  And plaintiffs were in fact reprimanded notwithstanding that Baines was the only person in a position to lock the door with the window ajar.

**Punitive Scheduling**.  Plaintiffs' evidence is sufficient to survive summary judgment as to these claims, as well.  It is alleged that Baines intentionally adjusted shift times, break times, work locations, and work assignments (specifically, requiring plaintiffs to work alone).

According to Hicks's affidavit, Baines "purposefully altered [Hicks's] work schedule . . . by shortening [his] off-duty time between work days" and by having "mandatory training sessions at which [Hicks's] presence was required during the eight hours [Hicks] had off between the assigned shifts."  Hicks Aff. ¶¶ 48-49.  Hicks's affidavit further states that "in July, 2002, . . . Baines assigned [Hicks] to work at the Richmond facility notwithstanding [Hicks's] seniority rights to work at the Courtland facility" and that

24

"[t]he Richmond facility housed a juvenile inmate 1) who brought a frivolous excessive force claim against [him], in part because prompted to do so by Defendant Baines who knew the allegations to be frivolous and unfounded and 2) had threatened violence against [Hicks's] family members." Id. ¶¶ 55-56. Likewise, Smith swore that Baines repeatedly required "one of the Plaintiffs to have to work their shift alone. Having only one staff member on duty was not only tedious but hazardous as the youth did at times act in a violent and harmful manner. . . . Dates on which [Smith] and his fellow Plaintiffs each worked their shifts alone were, including but not limited to, [listing seven dates]." Smith Aff. ¶¶ 32-33; see also Hicks Aff. ¶¶ 33-34. This evidence enables plaintiffs' punitive scheduling claims to survive summary judgment.

* * *

As we have explained above, White broadened the scope of Title VII's anti-retaliation provision. No longer must the alleged retaliatory act bear on the terms or conditions of employment; the proper inquiry now is whether "the employer's actions [were] harmful to the point that they

could well dissuade a reasonable worker from making or supporting a charge of discrimination." White, 548 U.S. at 57. The district court did not cite White, but Baines argues that the court nonetheless applied the correct standard. We disagree.

True, the district court mentioned that "[f]or purposes of a retaliation claim, an important consideration is whether the action is one that would deter a similarly situated individual of ordinary firmness from exercising his or her . . . rights." Hicks, 2006 WL 1994808, at *5 (internal quotation marks omitted). But under White, this is not just an "important" consideration--it is *the only* consideration.

Elsewhere, the district court's opinion makes clear that it was applying pre-White law that tied retaliation to adverse action affecting the terms and conditions of employment. For example, the district court, citing pre-White cases, explained that "only a materially adverse change in the terms and conditions of employment is actionable under a disparate treatment theory[,]" id. (internal quotation marks omitted); "[v]erbal humiliation, unfair criticism, or unfavorable schedules or work

26

assignments do not rise to the level of adverse employment actions because they do not have a material impact on the terms and conditions of a plaintiff's employment[,]" id.; "negative evaluations are adverse employment actions only if they affect ultimate employment decisions such as promotions, wages or termination[,]" id. (internal quotation marks and brackets omitted); and "plaintiffs' affidavits contain only conclusory allegations . . . none of which resulted in any meaningful change in the terms and conditions of plaintiffs' employment[,]" id. at *6.

The district court's error is important, because a straightforward application of White makes clear that plaintiffs' surviving workplace sabotage and punitive scheduling claims, if believed by a jury, constitute "adverse employment actions" for purposes of the third element of plaintiffs' prima facie case. Plaintiffs work (with a partner) in secure residential facilities where safety concerns are paramount. A reasonable employee in plaintiffs' position "may well be dissuaded" from participating in a discrimination investigation or proceeding if he knew that in retaliation, he would be disciplined (though innocent) for failing to arm a security

27

system that is needed to protect vulnerable residents, and/or that his work schedule would be changed such that he would have to work (alone) at a facility more dangerous and threatening than the facility at which he usually worked. In so reasoning, we give effect to White's teaching that "[c]ontext matters." 548 U.S. at 69.

Accordingly, the district court erred in concluding that plaintiffs' surviving claims of workplace sabotage and punitive scheduling do not constitute adverse employment actions.

**VI**

The final element in plaintiffs' prima facie case is to demonstrate a causal relationship between the protected activity and the adverse employment action. See Jute, 420 F.3d at 173. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. N.Y.

City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).  Here, plaintiffs swore in their affidavits that Baines told Smith that he (Baines) knew who cooperated in the investigation against him and that he would retaliate against them for their cooperation.  Hicks Aff. ¶ 18; Smith Aff. ¶ 18.  This evidence is sufficient to sustain plaintiffs' (de minimis) burden of showing, as part of their prima facie case, the requisite causal connection.

**VII**

Plaintiffs have therefore established a prima facie case of retaliation.  The burden now shifts to Baines to articulate legitimate, non-retaliatory reasons for these actions.  See Jute, 420 F.3d at 173.  If he does, the burden then shifts back to plaintiffs to prove that a substantial reason for the adverse employment actions was retaliation. Id.

The district court, having dismissed all of plaintiffs' claims at the prima facie stage, did not reach these two steps, and we decline to do so in the first instance.  The district court will need to consider these issues on remand.

**VIII**

Baines argues that plaintiffs' § 1983 claim alleging a violation of the Equal Protection Clause of the Fourteenth Amendment should be dismissed for failure to offer evidence that they were treated differently than employees who were similarly situated. It is certainly true that our case law requires a plaintiff seeking relief pursuant to the Equal Protection Clause to "show they were selectively treated compared with other similarly situated employees, and that selective treatment was based on impermissible considerations such as race, [or] religion." Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 166 (2d Cir. 2001) (internal quotation marks omitted) (alteration in original). We reject Baines's argument nevertheless. The premise of this lawsuit is that plaintiffs were treated differently-- that is, they suffered retaliation--on the basis of their participation in discrimination investigations and proceedings. That participation obviously constitutes an "impermissible" reason to treat an employee differently.

**CONCLUSION**

For the foregoing reasons, we affirm in part and vacate

and remand in part for proceedings consistent with this opinion.