11-1262-cv
Turner v. NYU Hosps. Ctr.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 2nd day of April, two thousand twelve.

PRESENT:    REENA RAGGI,
                       CHRISTOPHER F. DRONEY,
                                 *Circuit Judges*,
                       KIYO A. MATSUMOTO,
                                 *District Judge*.*

---------------------------------------------------------------------------------------

KEITH TURNER,

                *Plaintiff-Appellant*,

        v.                                                                                  No. 11-1262-cv

NYU HOSPITALS CENTER, NYU MEDICAL CENTER, NYU SCHOOL OF MEDICINE, NYU HEALTH SYSTEM,

                *Defendants-Appellees*.

---------------------------------------------------------------------------------------

APPEARING FOR APPELLANT:          KENNETH A. GOLDBERG, Goldberg & Fliegel LLP, New York, New York.

APPEARING FOR APPELLEES:          DAVID R. MARSHALL, (Rachel B. Jacobson, *on the brief*), Edwards Wildman Palmer LLP, New York, New York.

---

   * The Honorable Kiyo A. Matsumoto of the United States District Court for the Eastern District of New York, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (George B. Daniels, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 7, 2011, is AFFIRMED.

Plaintiff Keith Turner appeals from an award of summary judgment to defendants NYU Hospitals Center, NYU Medical Center, NYU School of Medicine, and NYU Health System (collectively, "NYUHC"), on his claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, see 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); 42 U.S.C. § 1981; the New York State Human Rights Law, see N.Y. Exec. Law § 296; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107. We review an award of summary judgment de novo, resolving all ambiguities and drawing all inferences in favor of the non-movant, and we will affirm only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. See Nagle v. Marron, 663 F.3d 100, 104–05 (2d Cir. 2011). We assume the parties' familiarity with the underlying facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Federal Claims: Discrimination and Retaliation

Turner contends that record evidence would permit a reasonable jury to find that he was terminated from his position as day manager of NYUHC's Building Services Department on June 14, 2004, because of his white race or American national origin, and in retaliation for complaining to a human resources official about ongoing discrimination in his

2

department. Turner's claims under Title VII and 42 U.S.C. § 1981 are evaluated under an identical burden-shifting analysis. See Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010). Furthermore, his Title VII discrimination and retaliation claims are analyzed under the same principles. See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) For purposes of deciding this appeal, we assume that Turner established prima facie cases of discrimination and retaliation. The burden therefore shifted to NYUHC to submit evidence of a legitimate, non-discriminatory or non-retaliatory justification for the adverse actions against Turner. See Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 n.6 (2d Cir. 2011) (retaliation claims); Leibowitz v. Cornell Univ., 584 F.3d 487, 498–99 (2d Cir. 2009) (discrimination claims).

Here, NYUHC has put forward evidence of two legitimate justifications for Turner's termination: (1) Turner's day manager position was eliminated as part of a hospital-wide effort to reduce all departments' personnel budgets by 2%; and (2) NYUHC promoted Robert Stephen to a consolidated day manager position, following the remaining manager's termination for cause, because he was more qualified and commanded a lesser salary than Turner. See Leibowitz v. Cornell Univ., 584 F.3d at 504 (accepting budgetary constraints as legitimate business reason for terminating employee); Byrnie v. Town of Cromwell, 243 F.3d 93, 102 (2d Cir. 2001) (stating that defendants sustained burden by submitting evidence that hired applicant was more qualified than plaintiff). The burden then returned to Turner to introduce evidence that NYUHC's proffered justifications were pretext for discrimination, see Leibowitz v. Cornell Univ., 584 F.3d at 499, or that retaliation was a substantial reason

3

for his termination, see Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d at 568 n.6. Turner posits that he carried this burden, precluding an award of summary judgment to NYUHC on his discrimination and retaliation claims. Like the district court, we conclude otherwise.

a.     Budget Constraints

Turner claims that he submitted evidence that Udel DeGazon, the Building Services Department's director at the time of his termination, had been planning to fire him before NYUHC issued the June 1, 2004 directive for a 2% cut in personnel budgets. Turner points to a May 25, 2004 email that DeGazon sent to an NYUHC compensation analyst requesting an analysis of supervisors' and managers' compensation in the Building Services Department, but omitting Turner's salary from the data to be analyzed. According to Turner, this omission shows that DeGazon was intending to fire him before NYUHC's budget crunch. The record does not permit a reasonable factfinder to draw such an inference. DeGazon's email was sent to verify whether any Building Services employees were being paid below the market rate and, therefore, deserved a raise. DeGazon referenced only one manager in his email, Frank Trujillo, who was being paid approximately $54,000 after 25 years' service, which was $6,000 less than Turner's salary, despite Turner's mere two years' service. The record is thus clear that DeGazon did not seek a raise for Turner because he was already the highest-paid manager in his department. There is no evidence suggesting that DeGazon omitted Turner's salary data because he was planning to fire him, and a jury could only infer as much by resorting to speculation, which is insufficient to defeat summary judgment. See Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010).

4

Nor can pretext be inferred from evidence that DeGazon and Hilda Pineda, the Building Services Department's Associate Director, coded Turner's termination in his employee file as a "Layoff—Reorganization," rather than a "Layoff—Lack of Funds." The chosen code does not suggest that Turner was laid off for non-budgetary reasons. On the contrary, it accurately reflects that Turner's management position was eliminated in the course of restructuring the Building Services Department in order to reduce personnel costs.

Turner submits that pretext is evident from the fact that DeGazon, who is black and of St. Lucian origin, promoted Stephen, who is of the same race and nationality, to the remaining consolidated day manager position, rather than assign Turner to that job. The evidence is uncontradicted, however, that Stephen's salary upon promotion to day manager was approximately $13,000 less than Turner's had been, a savings significantly greater than the five weeks' earnings NYUHC paid Turner when he was terminated. Stephen's promotion is therefore consistent with NYUHC's budgetary justification.

DeGazon's attempt to obtain raises for his staff in May 2004 does not undermine the budgetary rationale for the elimination of Turner's position because DeGazon took that action before June 1, 2004, when NYUHC ordered the staff reductions. DeGazon's and Pineda's raises upon promotion to director and associate director of the Building Services Department, respectively, are also consistent with the budgetary rationale: DeGazon and Pineda were paid less than the Department's preceding director and associate director, thus saving money for the Building Services Department. Turner offered no other evidence from which a jury could infer that the budgetary justification for his termination was unfounded.

5

Cf. Leibowitz v. Cornell Univ., 584 F.3d at 504–05 (concluding that defendants were not entitled to summary judgment because plaintiff submitted evidence showing that "the budgetary exigencies cited by defendants were not so dire as to warrant" plaintiff's termination).

   b.     Turner's and Stephen's Relative Qualifications

We further conclude that Turner failed to submit evidence that would permit a reasonable jury to find that DeGazon's and Pineda's judgment that Stephen was more qualified than Turner was a pretext for discrimination or retaliation. Although Turner received a "meets performance standards" rating in his September 2003 review, App. 256, that review indicated that Turner did not meet expectations in thirteen out of sixty-two reviewed areas. In the written section of Turner's performance review, Pineda expressed hope that "with time [Turner would] be able to fulfill this position," but noted that he "need[ed] to adjust to the fast pace and the demands of an institution this size," id. at 255, and that she and DeGazon expected him to improve his performance "immediately," id. at 254. The record shows that Turner failed to do so and repeatedly violated departmental procedures for assigning shifts to employees; tracking the department's beepers, keys, and beds; responding promptly to pages; and keeping up-to-date records. By June 2004, after approximately nine months of non-improvement and the elimination of Turner's day manager position, DeGazon and Pineda determined that Turner was not qualified to assume the remaining consolidated day manager position, which would entail greater responsibilities. Thus, following termination, DeGazon and Pineda marked Turner as "ineligible for rehire"

6

because of "[u]nacceptable level of performance," id. at 854, which was consistent with DeGazon's and Pineda's practice for former employees who underperformed but were not necessarily terminated for cause. In contrast to Turner, Stephen was deemed at least an adequate candidate for the consolidated day manager position based on his seven years' experience as a Building Services Department supervisor, his prior management experience, and his last positive performance review.

While Turner plainly disagrees with these relative assessments, to defeat summary judgment on the ground of pretext or that retaliation was a substantial reason for his termination, Turner had to adduce evidence that his qualifications were "so superior" to Stephen's that "no reasonable person, in the exercise of impartial judgment, could have chosen [Stephen] over the plaintiff for the job in question." Byrnie v. Town of Cromwell, 243 F.3d at 103 (internal quotation marks omitted). The record evidence does not permit Turner to satisfy that standard.

Nothing in the record suggests that Turner's and Stephen's performance evaluations were erroneous, or that DeGazon's and Pineda's judgment that Stephen was more qualified than Turner was pretextual. Former Building Services Department Director Joey Morelos's subjective belief that Turner was meeting expectations is consistent with Turner's 2003 performance evaluation, but Morelos did not cite any objective reasons why DeGazon and Pineda, Turner's direct supervisors with the greatest familiarity with the quality of his work, were wrong in determining that Turner had not improved enough to meet expectations in 2004. At most, Morelos's deposition testimony shows that reasonable people could disagree

7

as to Turner's qualifications relative to Stephen's, which is insufficient to establish a triable question of pretext. See id.

Further, Turner's assertion that NYUHC violated its own internal procedures when it failed to give him preference over Stephen for the day manager position is belied by the record. Turner was only entitled to preference if his supervisors determined that he was eligible for rehire, which they did not. Nor does DeGazon's statement to Reginald Odom, NYUHC's Vice President of Employee and Labor Relations, describing Turner as "all right" and "okay" contradict the negative aspects of Turner's performance history. Odom Dep. at 67. DeGazon made those statements during a human resources investigation of the Building Services Department, and they were clearly meant to convey that DeGazon had an amicable relationship with Turner, not that Turner was performing his job well or to signify his ability to assume the greater responsibilities of the consolidated position.

Finally, Turner cites a passage from the conclusion of DeGazon's deposition where DeGazon answered "yes" when asked if he had wanted Stephen to be promoted to day manager in 2002, when Turner was hired, and whether he had "waited for an opportunity to find a way to get Mr. Turner . . . out of the way." DeGazon Dep. at 157. Immediately before answering this question, however, DeGazon denied that he had ever "sought to eliminate Mr. Turner from NYU because [he] didn't want [Turner] in the first place," or that he "promoted Mr. Stephen because he's black and from St. Lucia." Id. at 156–57. Rather, DeGazon consistently stated that he wanted to promote Stephen because he believed Stephen to be more qualified than Turner, and he thought Stephen should have been promoted in 2002.

8

Thus, the record at most shows that DeGazon had long been of the view that Stephen was more qualified than Turner for the manager position. Because the evidence does not demonstrate Turner's clear superiority, a reasonable jury could not infer from DeGazon's maintenance of this view through the challenged dismissal that this reason was a pretext for discrimination or that retaliation was a substantial reason for Turner's termination.

c.     Circumstantial Evidence of Pretext

We reject Turner's argument that he can withstand summary judgment based on other circumstantial evidence of pretext, i.e., DeGazon's firing of two other white managers for cause. Whether or not those terminations were discriminatory or retaliatory, they would not undermine NYUHC's demonstration that Turner's job was eliminated in response to legitimate budgetary exigencies,[1] and that Stephen was promoted to the remaining consolidated day manager position because his salary was lower and DeGazon and Pineda perceived him as more qualified than Turner. Nor would the other employees' terminations establish a pattern within the Building Services Department from which a jury could infer that Turner was the victim of discrimination or retaliation. See Pollis v. New Sch. for Soc. Research, 132 F.3d 115, 121–22 (2d Cir. 1997) (reversing jury award on plaintiff's claim of discrimination based on small sample size of comparators, which diminished likelihood that "observed pattern is attributable to other factors and accordingly the less persuasive the inference of discrimination to be drawn from it").

---

[1] In 2004, NYUHC terminated twenty-eight employees hospital-wide, more than two-thirds of whom were people of color.

9

2.      State and Municipal Claims

Turner's state and municipal discrimination and retaliation claims "form part of the same case or controversy," 28 U.S.C. § 1367, and are analytically identical to Turner's federal claims, see Petrosino v. Bell Atl., 385 F.3d 210, 220 n.11 (2d Cir. 2004); Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997).  In such circumstances, the district court did not abuse its discretion in exercising supplemental jurisdiction to grant summary judgment to NYUHC on the state and municipal law claims.  See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).  Nor did the district court err in determining that Turner's claims fail under state and municipal law, as the record conclusively shows that Turner was neither discriminated nor retaliated against, but was terminated for legitimate reasons relating to the Building Services Department's budget and his relative qualifications for the consolidated day manager position.  See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010) (discussing different standards under state and municipal law, and concluding that defendant was entitled to summary judgment under both).

3.      Evidentiary Decisions

We further identify no abuse of discretion in the district court's construal of Turner's September 21, 2010 letter as a motion to strike Pineda's declaration and accompanying exhibits, and the district court's denial of that motion.  See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008).  Nor did the district court abuse its discretion in treating Turner's re-litigation of those issues in his opposition to summary judgment as a motion for reconsideration, and then in denying that motion.  See Priestley v. Headminder,

10

Inc., 647 F.3d 497, 501–02 (2d Cir. 2011).  In discovery, Turner did not seek the information in the Pineda declaration regarding NYUHC's previous decisions to rehire white and non-white employees, and did not ask Pineda or DeGazon about this at their depositions.  Thus, the district court did not err in determining that the Pineda declaration and attached exhibits were not documents wrongly withheld in discovery.  See Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 286 (2d Cir. 2000) (holding that district court did not abuse discretion in granting summary judgment when plaintiffs did not seek discovery relied upon by defendants in their motion).

4.      Conclusion

We have considered Turner's remaining arguments and conclude that they are without merit.  Accordingly, the order of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court