John MONACHINO, Plaintiff,

v.

Sheila BAIR, Defendant.

No. 09 Civ. 3939 (VM).

United States District Court,
S.D. New York.

Feb. 1, 2011.

**434**

Jonathan Ryan Bell, Law Office of Jonathan Bell, Garden City, NY, for Plaintiff.

William Stanley Jones, Beth A. Wilt, Federal Deposit Insurance Corporation, Arlington, VA, Thomas M. Clark, Federal

Deposit Insurance Company, New York, NY, for Defendant.

### *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

Plaintiff John Monachino ("Monachino") brought this action against defendant Sheila Bair, Chairman of the Federal Deposit Insurance Corporation ("FDIC"), asserting claims for discrimination, retaliation, and hostile work environment arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 791 et seq.; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. The FDIC now moves for summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). For the reasons listed below, the Court GRANTS the FDICs motion in its entirety.

### I. *BACKGROUND* [1]

Monachino, a 59-year-old white male of Italian origin, joined the FDIC in 1989. In April 2003, he became an Examination Specialist (IT) in the FDIC's New York Regional Office ("NYRO"). At approximately the same time, Linda Smith Packer ("Smith Packer") was also selected for an Examination Specialist (IT) position in the NYRO. Both Monachino and Smith Packer were supervised by Assistant Regional Director Edwin Lloyd ("Lloyd"). In January 2005, Assistant Regional Director Gregory Bottone ("Bottone") replaced Lloyd as Monachino's direct supervisor,

On April 4, 2006, Bottone issued a Letter of Warning to Monachino. The Letter

---

[1] The factual summary below is derived from the following documents and any exhibits and declarations attached thereto: Defendant's Statement of Material Facts as to Which There Is No Genuine Issue, dated October 1, 2010; Monachino's Statement in Response to

FDIC's Rule 56.1 Statement, dated November 5, 2010; and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, dated November 19, 2010. The Court will make no further citations to these sources unless otherwise specified.

of Warning stated that certain e-mails that Monachino had sent to another FDIC employee were "unprofessional" in that "they contained language that was argumentative, accusatory, and demeaning." Bottone met with Monachino on April 24, 2006, to discuss the Letter of Warning. At that meeting, Monachino expressed the belief that he was subject to a "hostile work environment" that was causing him stress and anxiety. Specifically, Monachino believed that Smith Packer was a "difficult" person who was "territorial" and did not communicate with him regarding several work-related matters. (Monachino Dep. 130:17, 130:24.) Monachino also believed that Lloyd was "a very difficult individual" and "a very poor manager." (*Id.* at 43:11–12, 44:13–14.)

Frustrated by what he perceived to be management's lack of response to his concerns, Monachino took leave beginning June 14, 2006[2] and contacted an Equal Employment Opportunity ("EEO") counselor on July 25, 2006. Although Monachino had been approved to take annual leave, he sought to convert some or all of the time to sick leave. Bottone advised Monachino by e-mail that Monachino did not have any accrued sick leave remaining and that, consequently, the time would be charged to annual leave unless Monachino provided medical documentation that would support advanced sick leave. Monachino did not provide the requested medical documentation, and ultimately the time was charged to a combination of annual leave, sick leave and compensatory time.

As Monachino's scheduled return to work on August 21, 2006, approached, Monachino sought permission to telework from August 21 through August 24, 2006, to "catch up" on e-mails accumulated during his absence. Bottone denied the request to telework, advising Monachino that telework was inappropriate because he "ha[d] been out of the office for over three months [including an out-of-office detail prior to his leave] and ha[d] no outstanding work assignments." Additionally, Bottone, uncertain when, if ever, Monachino would return to work, cancelled Monachino's attendance at two information technology ("IT") seminars that Monachino had been slated to attend in September 2006. Monachino believed that Bottone's denial of his request to telework and cancellation of his seminar attendance constituted retaliation for Monachino's EEO contact, of which Bottone was aware.

Monachino filed a formal complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 16, 2006, and he filed six subsequent complaints of discrimination, retaliation and hostile work environment over the course of the following year. Monachino often requested "official time"—that is, time that he would otherwise spend on work assignments—to prepare and support his EEOC complaints. Bottone granted Monachino official time on several occasions, but he sometimes allowed fewer hours than Monachino had requested. Monachino took these reductions to be further evidence of Bottone's discrimination and retaliation.

Monachino returned to work on September 18, 2006. Prior to Monachino's return to work, Bottone received a letter from Monachino's primary care physician, Scott M. Klares ("Klares"), stating that Monachino "currently suffers from significant anxiety and depression [which affects] his cognitive abilities." Klares opined that "I do not feel [Monachino] is able to perform his duties as an IT specialist for the FDIC."

**2.** While Monachino disputes that he was on leave for the entire period from June 14 to September 18, 2006, he admits that he was on leave status for part of June, most of July and most of August 2006.

On September 20, 2006, Bottone had a telephone meeting with Monachino and others to discuss Klares's letter (the "September 20 Meeting"). At the meeting, Bottone agreed to provide Monachino with a detailed request for medical information, and Monachino agreed to obtain the information requested. Monachino was referred to a psychiatrist, Joel Wolfson ("Wolfson"), for evaluation. On September 21, 2006, Wolfson called Bottone and agreed to provide medical documentation. Wolfson eventually provided a handwritten note indicating that Monachino needed sick leave for the week of October 16, 2006, but he never provided documentation of the kind Bottone requested at the September 20 Meeting. Monachino submitted Wolfson's bill for $1,050 for reimbursement via the FDIC s Electronic Travel Voucher ("ETV") system. The ETV system—which is intended to process vouchers for travel-related business expenses, not medical bills—generated an automatic payment to Monachino. Monachino had also requested, and received, reimbursement for Wolfson's services from his health insurance plan and flexible spending account, but he believed he was entitled under the collective bargaining agreement to reimbursement from the FDIC. Nonetheless, Monachino was aware that his use of the ETV system was improper and described it as "standing up to management" and "ma[king] a point."

During the September 20 Meeting, Bottone gave Monachino a special assignment, pending additional information about Monachino's ability to work, to prepare a presentation on data security breaches. Bottone cancelled Monachino's attendance at a training in October 2006 and told Monachino to focus on the special assignment. Monachino believed that the special assignment was "make-work" of no real importance to the FDIC. Perhaps in fulfillment of that prophecy, he submitted a final work product that appeared to be cobbled together from various Internet sources and was not used by the FDIC.

Additionally, Bottone had informed Monachino at the September 20 Meeting that Monachino would be required to call Bottone, who worked primarily in the Boston office, when Monachino arrived at work in the morning and before he left for the evening so that Bottone could monitor Monachino's attendance. Monachino believed that each of the outcomes of the September 20 Meeting—the request for additional medical documentation (which he interpreted as a demand that he submit to a "fitness for duty" examination), special assignment on data security breaches and instruction to call Bottone every morning and evening constituted retaliation for his EEO activity.

On October 31, 2006, Bottone issued a Letter of Reprimand to Monachino. The Letter of Reprimand stated that Monachino had sent "antagonistic, sarcastic, and disrespectful" e-mails to Bottone[3] and

---

**3.** The Letter of Reprimand reproduced in full eight e-mails from Monachino to Bottone. The following examples are representative:

"You are driving me nuts. Besides being tired, I just can't deal with this anymore and am requesting 4 hours sick leave for the rest of today. . . . You are driving me absolutely nuts!" (Sept. 18, 2006.)

"I have one question for you now, why am I required to call you in the morning and in the evening when I leave work? You have not stated a reason. Do you have a reason other than reprisal for my EEO complaint? Can you make one up for the chairman?" (Oct. 11, 2006.)

"Your statement does not make any sense, please think of another answer." (Oct. 23, 2006.)

"Well, as reprisal for my EEO Complaint, you have canceled all of my training. Congratulations, I hope you sent someone in my place as that would be a waste of money." (Oct. 23, 2006.)

warned that "future misconduct … may result in more severe disciplinary action." Monachino believed that the Letter of Reprimand was improper because he had not been given prior "verbal counseling."

During the remainder of 2006, Monachino made various requests for advanced sick leave and to telework. Bottone denied Monachino's requests for advanced sick leave because Monachino had not provided the necessary medical documentation and denied the requests to telework. Again, Monachino believed that the denial of advanced sick leave and requests to telework were retaliatory.

Monachino's annual Pay for Performance ("PFP") evaluation for 2006 awarded him marks of "satisfies expectations" or "meets expectations" in all areas. The PFP also noted that Monachino's work product on the special assignment given to him by Bottone was inadequate. Monachino disputed the evaluation, contending that his low marks reflected retaliation for the EEOC complaints he had made.

On January 25, 2007, Acting Deputy Regional Director Gail Butler issued a "Notice of Proposed Fourteen (14) Day Suspension" to Monachino based on Monachino's misuse of the ETV system to obtain reimbursement for Wolfson's bill; failure to follow Bottone's directions that Monachino not submit requests for advanced sick leave to which he was not entitled; falsification of his timesheets for three days on which he had not worked; making a false statement to Bottone in a matter of official business; and sending inappropriate e-mails to Bottone. Monachino exercised his right to make an oral reply at a hearing on March 19, 2007. On May 9, 2007, Regional Director Doreen Eberley issued a "Notice of Decision—Fourteen (14) Calendar Day Suspension" ("Notice of Decision") to Monachino sustaining four of the five reasons for the proposed suspension and not sustaining

the allegation of making a false statement to Bottone. The Notice of Decision indicated that Monachino would be suspended from work beginning May 13, 2007 through May 26, 2007.

Meanwhile, in April 2007, Deputy Regional Director James Watkins ("Watkins") became Monachino's direct supervisor. Watkins scheduled a meeting with Monachino for May 3, 2007, "to discuss [his] leave requests, work requirements, and emails." The meeting deteriorated rapidly and ended with Monachino becoming agitated and calling Watkins or the human resources specialist a "liar." (Watkins 8/8/08 Aff. p. 6.) A secretary seated near the conference room where the meeting took place reported that she was frightened by Monachino's behavior. Shortly after the meeting ended, Assistant Regional Director Gregory Wyka reported to Watkins that he had observed Monachino miming shooting pistols with his hands, making popping noises and saying something to the effect of "and that will be the end of that." (Goodall 7/31/08 Aff. p. 3.) Watkins immediately reported Monachino's behavior to Regional Manager Julia N. Goodall, who met with Monachino and his union representative to inform Monachino that he would be placed on administrative leave for the remainder of the day. A security guard escorted Monachino first to his office to collect his personal belongings and then out of the building. Although apparently armed, the guard did not physically restrain or touch Monachino.

Monachino never returned to work. On June 13, 2007, psychologist Bruce Santner ("Santner") sent a letter to the FDIC's occupational medicine consultant, Meal L. Presant, M.D. ("Presant"), regarding Monachino's medical condition and ability to work. Presant opined, based on his review of Santner's letter, that Monachino

"has deep rooted grievances against the FDIC" and therefore was "unlikely to improve and ever be able to return to any regular work status [although h]is condition would not prevent him from working in another organisation."

On July 31, 2007, Watkins sent a letter to Monachino directing him to return to work on August 6, 2007. When Monachino did not report as directed, Watkins proposed by letter to Monachino dated August 16, 2007, that Monachino be removed from employment with the FDIC because of his excessive absences. Monachino did not dispute the extent of his absences from work, but he contended that the primary reason for his removal was retaliation for his EEOC complaints. On September 20, 2007, Regional Director Doreen Eberley determined that Monachino should be removed from Federal service effective September 21, 2007.

Monachino appealed his removal to the Merit Systems Protection Board ("MSPB") but later withdrew his appeal on the condition that his application for disability retirement be approved. The Office of Personnel Management ultimately approved Monachino's application for disability retirement, and he never reinstated his MSPB appeal.

In this action, Monachino asserts claims for discrimination, retaliation, and hostile work environment arising under Title VII; discrimination, retaliation, and hostile work environment arising under the Rehabilitation Act; and discrimination, retaliation, and hostile work environment arising under the ADEA.

## II. SUMMARY JUDGMENT STANDARD

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-movant. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994).

## III. DISCUSSION

### A. DISCRIMINATION CLAIMS

■ Monachino contends that FDIC management exacerbated his work-related stress and anxiety by discriminating against him. As a threshold matter, the Court finds that Monachino abandoned his discrimination claims. The FDIC argues that Monachino's discrimination claims are not properly before the Court because they are untimely, unexhausted or were abandoned during the administrative process before the MSPB. (FDIC Mem. at 9–11.) Monachino's opposition papers fail to address why his discrimination claims should nonetheless be permitted and, instead, discuss only his retaliation and hostile work environment claims. That failure alone entitles the FDIC to summary judgment on Monachino's discrimination claims.[4] *See Maher v. Alliance Mortg.*

---

4. The same is true to the extent that Monachino's discrimination claims may include

claims for failure to accommodate under the Rehabilitation Act. (FDIC Mem. at 25.)

*Banking Corp.,* 650 F.Supp.2d 249, 267 (E.D.N.Y.2009) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *see, e.g., S.E.C. v. Kelly,* No. 08 Civ. 4612, 765 F.Supp.2d 301, 322–23, 2011 WL 135845, at *20 (S.D.N.Y. Jan. 7, 2011) (granting summary judgment where opposition papers failed to respond to movant's argument); *see also Robinson v. Fischer,* No. 09 Civ. 8882, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) (collecting cases).

■ Even if the Court were to examine Monachino's discrimination claims, the Court would find that summary judgment on those claims is warranted. To establish a prima facie case, Monachino must show that the circumstances surrounding the FDIC's actions "permit an inference of discrimination." *Beyer v. Cnty. of Nassau,* 524 F.3d 160, 163 (2d Cir.2008). Monachino insists that he was singled out for unfair treatment. Yet he has not presented any evidence, such as discriminatory comments or disparate treatment of employees similarly situated to Monachino, from which a reasonable factfinder could conclude that the FDIC's actions were based on a protected characteristic. *See Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir.2001) ("It is axiomatic that mistreatment at work … is actionable … only when it occurs because of an employee's sex, or other protected characteristic."). Absent evidence of unlawful motive, Monachino cannot establish a prima facie case of discrimination.

**B. *RETALIATION CLAIMS***

■ Monachino next alleges that FDIC management retaliated against him for filing EEOC complaints. Retaliate on claims brought under Title VII, the Reha-

bilitation Act,[5] and the ADEA are all analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d Cir.2010) (standard under Title VII and ADEA); *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (standard under Rehabilitation Act). First, Monachino must establish a prima facie case of retaliation by showing that (1) he participated in a protected activity; (2) the FDIC knew of the protected activity; (3) the FDIC took an adverse employment action against him; and that (4) a causal connection between the protected activity and the adverse employment action. *See Hicks v. Baines,* 593 F.3d 159, 164 (2d Cir.2010). Second, if he does so, the burden shifts to the FDIC to articulate a legitimate, nonretaliatory reason for its actions. *See id.* Third, Monachino may still prevail if he points to evidence sufficient to permit a reasonable factfinder to conclude that the FDIC's stated reason is pretext for unlawful retaliation. *See id.*

1. *McDonnell Douglas Step One*

■ The Court need not resolve the initial question of whether Monachino has established a prima facie case of retaliation if the FDIC has met its burden of articulating a legitimate, nonretaliatory reason for its actions. *See Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 169 (2d Cir.2001). The Court therefore proceeds directly to step two of the *McDonnell Douglas* test: whether the FDIC has proffered legitimate reasons for its challenged actions.

2. *McDonnell Douglas Step Two*

a. *Telework*

■ Monachino challenges Bottone's denial of his requests to telework. The Court

---

5. For purposes of this Decision and Order, the Court assumes without deciding that Mo-

nachino is disabled within the meaning of the Rehabilitation Act.

finds that Bottone had a legitimate reason to deny Monachino's request to telework in August 2006 because "catch[ing] up" on e-mails is not "[a]ppropriate work to be performed while teleworking" per FDIC policy. (*See* FDIC Circular 2121.1 (May 16, 2003).) The policy also provided legitimate grounds to deny Monachino's subsequent requests to telework in that the Letter of Reprimand was a disciplinary action that rendered Monachino ineligible to telework.

### b. *Special Assignment on Data Security Breaches*

■ Monachino argues that management assigned him the special project on data security breaches so that he would fail. He also objects that the special assignment was useless "make-work." Bottone's stated reason for assigning the project to Monachino was to give Monachino an opportunity to demonstrate that he was still capable of professional work. The Court is persuaded that no rational jury could find Bottone's explanation insufficient in light of the timing of the assignment, which followed the Klares letter suggesting that Monachino was unfit to do his job. Similarly, as to the "make-work" objection, while the FDIC did not use Monachino's work product, the Court finds that no rational jury would reject the FDIC's explanation that it could not use a presentation that consisted of unattributed quotations from Internet sources.

### c. *2006 Pay for Performance Evaluation*

■ Monachino contends that his 2006 Pay for Performance evaluation, which awarded him lower ratings than he had received in previous years, was retaliatory. However, the 2006 Pay for Performance evaluation was supported by legitimate reasons in that it accurately reflected both Monachino's accomplishments in the first half of 2006 and his poor performance on the special assignment. Under the circumstances, no rational jury would find retaliation in Monachino's evaluation.

### d. *Advance Sick Leave*

■ Monachino takes issue with Bottone's denial of some of his requests for advance sick leave. The explanation that Bottone provided at the time was that FDIC policy did not entitle Monachino to advance sick leave because he had not provided the necessary medical documentation. The Court notes that, regardless of any initial denials, it is undisputed that eventually Monachino was advanced 240 hours of sick leave, which is the maximum number of hours that may be advanced under FDIC policy. The Court is persuaded that no rational jury would find retaliation in the FDIC's denial of Monachino's requests for advance sick leave.

### e. *Official Time*

Monachino suggests that his requests for official time were denied, or denied in part, in retaliation for his EEOC complaints. The relevant EEOC directive provides that Federal employees "are entitled to a reasonable amount of official time to present [a] complaint and to respond to agency requests for information." Bottone reduced some of Monachino's requests for official time to amounts that he considered to be reasonable and denied others. In all, Monachino was granted at least 17 hours of official time. The Court concludes that no rational jury would find that the directive did not provide a legitimate reason to adjust Monachino's demands.

### f. *Fourteen–Day Suspension*

■ Monachino argues that the stated reasons for his fourteen-day suspension are false. First, Monachino contends that he did not misuse the ETV system to obtain payment for Wolfson's bill be-

cause he believed he was entitled under the collective bargaining agreement to reimbursement and management was unresponsive to his inquiries as to how to submit the bill. However, Monachino testified at his deposition that he used the ETV system to "ma[ke] a point" to management. While Monachino may have believed that his actions were justified, apparently he was also aware that he misused the system. Therefore, the Court is persuaded that no rational jury could find that Monachino's actions did not provide a legitimate reason for the suspension.

Monachino's other objections to the suspension are similarly without merit. For example, Monachino does not deny that he submitted false time and attendance records, but he argues that he did so because he was "confused." He also suggests that his e-mails to Bottone were appropriate because he had been provoked by Bottone. The Court has reviewed the e-mails and finds that a rational jury would conclude that they provided a legitimate reason for the suspension.

g. *Termination* [6]

 Monachino characterizes Watkins as leading a campaign to terminate him for reasons unrelated to his absences from work. On August 17, 2007, Watkins sent a letter to Monachino proposing that he be removed from Federal service because of "Excessive Absences Resulting in Your Inability to Perform Your Duties on a Regular Basis." The letter indicated that during the seven-month period between January 21, 2007, and August 17, 2007, Monachino had spent approximately 150 hours in duty status and the remainder on sick leave, annual leave, leave without pay

or absent without leave. Watkins noted that Monachino's position was "critical" to the work of the FDIC and that his absence "placed an undue burden" on other FDIC employees. Monachino was given an opportunity to respond to the proposal, and he made an oral reply on September 4, 2007. Although Monachino reiterated his view that the FDIC was retaliating against him for his EEOC complaints, he did not disagree with Watkins's summary of his attendance record. The Court is persuaded that no rational jury would find that Monachino's attendance record did not provide a legitimate reason for his eventual removal from Federal service on September 21, 2007.

h. *Other Miscellaneous Claims*

Monachino also alleges that the following facts, among other things, constitute evidence of retaliation: (1) he was not permitted to take part in several IT training sessions; (2) he was required to verify his attendance by calling Bottone; (3) he was denied overtime to complete the special assignment on data security breaches; (4) his contact information was removed from the FDIC's Internet site; (5) a human resources specialist referred to him as a "disgruntled employee"; (6) he was not selected for various temporary assignments or "details"; (7) he did not receive verbal counseling prior to receiving the Letter of Reprimand in October 2006; and (8) he was excluded from e-mails sent to other IT personnel in the NYRO. The Court has considered these and Monachino's remaining allegations of retaliatory conduct and is not persuaded that a rational jury would rule in favor of Monachino on these claims.

---

**6.** The FDIC argues that any claims arising out of Monachino's termination are unexhausted because he voluntarily withdrew his appeal before the MSPB. (FDIC Mem. at 9–10.) The

Court need not decide whether claims arising out of Monachino's termination are properly presented because the Court finds those claims to be without merit.

### 3. *McDonnell Douglas Step Three*

Because the FDIC has proffered legitimate, nonretaliatory reasons for its actions, the Court next considers whether Monachino has pointed to evidence sufficient to permit a reasonable factfinder to conclude that those reasons are pretextual. *See Hicks,* 593 F.3d at 164.

■■■ The Court concludes that Monachino has not provided a sufficient evidentiary basis to deny summary judgment. Monachino's own affidavits and testimony are conclusory and provide no factual basis to support a reasonable belief on his part that he was the victim of retaliation. The only evidence in the record that could potentially support Monachino's retaliation claims is found in the affidavit of Andrew T. Scotchlas ("Scotchlas"), who served as Monachino's union representative. According to Scotchlas, another FDIC employee, William Henley Jr. ("Henley"), stated that Monachino "blackballed himself from FDIC" by filing his EEOC complaint and that "Management is coming after him." Henley held a position in the FDIC's Washington, D.C. office equivalent to Monachino's, did not work directly with Monachino and was not a decisionmaker as to Monachino's employment status. Henley's conclusory references to the unlawful motives of others, as reported by Scotchlas, are clearly inadmissible hearsay, and otherwise standing alone, are insufficient to defeat summary judgment. *Cf. Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 726–27 & n. 13 (2d Cir.2010) (affirming grant of summary judgment where plaintiff's only evidence of discrimination consisted of supervisor's comments "referring vaguely to the discriminatory motives of others at the company").

### C. *HOSTILE WORK ENVIRONMENT CLAIMS*

■■■ Finally, Monachino alleges that FDIC management created a hostile work environment for him and was unresponsive to his complaints of a hostile work environment. To establish a hostile work environment in violation of Title VII, Monachino must show that his workplace was "permeated with discriminatory intimidation, ridicule, and insult" so "severe or pervasive" that it "alter[ed] the conditions of [his] employment." *Kaytor v. Elec. Boat Corp.,* 609 F.3d 537, 546 (2d Cir. 2010). The test is both objective and subjective. *See id.* at 547. That is, the conduct of which Monachino complains must have been so severe or pervasive that a reasonable person would find it hostile or abusive, and Monachino himself must have perceived the conduct to be hostile or abusive. *See id.; see generally Harris v. Forklift Sys.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The standard is the same under the Rehabilitation Act, *see Lucenti v. Potter,* 432 F.Supp.2d 347, 361 (S.D.N.Y.2006), and the ADEA, *see Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 240–41 (2d Cir.2007). Importantly, Monachino must show a "linkage or correlation" between the abusive conduct and a protected characteristic, i.e., race, national origin, sex, age or disability. *See Lucenti,* 432 F.Supp.2d at 361 (*quoting Alfano v. Costello,* 294 F.3d 365, 375 (2d Cir.2002)).

■■■ Although Monachino subjectively perceived his colleagues and supervisors to be hostile to him, the Court is not persuaded that he has presented sufficient objective evidence from which a rational jury could make a finding of severe or pervasive abusive conduct. Monachino's allegations that Smith Packer and Lloyd were "difficult" to work with reflect ordinary interpersonal conflict that does not rise to the level of severe or pervasive. In his opposition brief, Monachino also relies on matters relating to his leave, time and attendance; his being escorted from the office by a security guard on May 3, 2007;

the human resource specialist's comment that Monachino was a "disgruntled employee"; his isolation in the office; and the removal of his name from the FDIC's Internet site as evidence of a hostile work environment. Even assuming that that conduct rose to an actionable level, Monachino's hostile work environment claims would fail because he has not shown any "linkage or correlation" between the conduct, on the one hand, and a protected characteristic, on the other. *See Alfano*, 294 F.3d at 377. There is simply no evidence that animus against Monachino's race, national origin, sex, age or disability motivated any of the incidents described above. Finally, because Monachino's complaints of a hostile work environment are wholly unfounded, his argument that the FDIC was unresponsive to them is irrelevant.

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Sheila Bair for summary judgment (Docket No. 27) dismissing the claims asserted in this action by plaintiff John Monachino is GRANTED.

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**