13-2485-cv
*Oswald Lewis v. City of Norwalk*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14ᵗʰ day of April, two thousand fourteen.

PRESENT:

> GUIDO CALABRESI,
> JOSÉ A. CABRANES,
> DEBRA A. LIVINGSTON,
> > *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

OSWALD LEWIS,

     *Plaintiff-Appellant,*

       -v.-                           No. 13-2485

CITY OF NORWALK, THOMAS HAMILTON, JAMES HASELKAMP,

     *Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | MILTON L. WILLIAMS, JR., Vladeck, Waldman, Elias, & Engelhard, P.C., New York, NY. |
| **FOR DEFENDANTS-APPELLEES:** | ROBIN G. FREDERICK (Clarisse N. Thomas, *on the brief*), Shipman & Goodwin LLP, Stamford, CT. |

Appeal from the June 3, 2013 judgment of the United States District Court for the District of Connecticut (Stefan R. Underhill, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the June 3, 2013 judgment of the District Court be **AFFIRMED**.

Plaintiff-Appellant Oswald Lewis appeals from a June 3, 2013 judgment following a May 8, 2013 oral decision granting summary judgment for defendants Thomas Hamilton, James Haselkamp and the City of Norwalk (jointly, the "City") on Lewis's claims of hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Section 1983 of the Civil Rights Act of 1871 ("§ 1983"), 42 U.S.C. § 1983, and the Equal Protection Clause of the Fourteenth Amendment. We assume familiarity with the factual and procedural history, and repeat only those details necessary to the resolution of this appeal, mindful that we must view the evidence in the light most favorable to the party opposing summary judgment. *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

## BACKGROUND

In September 2006, Hamilton, the City's Director of Finance, hired Lewis as the City's Director of Management and Budgets, a position that reported directly to Hamilton. Hamilton had supervised Lewis when the two worked together for the City of Stamford, and had previously given Lewis "nothing but positive" evaluations.[1]

Lewis alleges that soon after he began working for the City, Hamilton, who is openly gay, began making sexual advances toward him. Specifically, Hamilton is alleged to have "leered" at Lewis, looking from his crotch to his head while smiling, and to have made gestures with his tongue, which Lewis found "irritating." Lewis claims that this conduct occurred a couple of times a week in the beginning but became more sporadic over time, occurring no more than a handful of times in 2008-09. Lewis's other allegations are that Hamilton complimented his taste in clothing; invited Lewis to join his gym so that they could work out together; invited Lewis out for drinks; and disclosed to Lewis that he was lonely in his current relationship, and asked for help dealing with his loneliness. Once, when Lewis was in his office, Hamilton banged on the door and, when Lewis told him not to come in because he was changing into his jogging clothes, Hamilton waited outside until Lewis came out and then spoke with him excitedly. Lewis asserts in his brief that Hamilton's conduct negatively affected his work performance.

---

[1] Lewis does not claim that Hamilton ever acted inappropriately toward him when they were working together in Stamford.

Lewis claims that "after months of spurned sexual advances," Hamilton enlisted his friend James Haselkamp, who was the City's Director of Personnel and Labor Relations, to force Lewis out of the workplace. On May 6, 2010, Hamilton and Haselkamp met with Lewis to discuss Lewis's 2009-10 performance evaluation, which was marked as "Draft," and contained what Hamilton referred to as "very damaging" information. Lewis's performance evaluations for 2006 through 2009 also reflected problems with the quality of Lewis's work—he consistently received a grade of "needs improvement" under quality of work, and Hamilton noted that he "frequently need[ed] to correct his work product." Lewis was familiar with these earlier evaluations as evidenced by his signature showing that he had discussed them with Hamilton. There is no evidence that Lewis disputed the veracity of, or the basis for, these negative performance reviews at the time he received them.

At the May 6, 2010 meeting, Lewis was given the option to resign, which would require him to sign a "Full and Final Release of Claims" in exchange for remaining on administrative leave with salary and benefits through June 30, 2010. If he resigned, his damaging performance review would remain in draft form, and would not be available to future employers. Alternatively, Lewis could undergo the formal removal process, which would include a personnel hearing to consider his continued employment. Lewis was given three days to consider whether to resign, during which he was placed on administrative leave.

On May 18, 2010, after the deadline to resign had elapsed, but before formal removal processes had begun, Lewis, through his attorney, notified Haselkamp, pursuant to the City's sexual harassment policy, of Hamilton's alleged sexual harassment. At an initial meeting to discuss the charges, Lewis explained that he had not reported the harassment before because he was scared of losing his job and because he knew that Haselkamp, who was responsible for fielding harassment complaints, was a friend of Hamilton. Lewis claimed that Haselkamp had contributed to the hostile work environment by massaging Hamilton's shoulders during a meeting, and stating that he knew how to "relieve and relax" Hamilton. Upon hearing this accusation, the City's Corporation Counsel concluded that Haselkamp should not be involved in the investigation into the harassment allegations. Jennifer Dixon, an attorney at an outside law firm where Haselkamp had formerly been employed, was retained to conduct the investigation.[2]

At the close of the investigation, during which 14 witnesses were interviewed, including Lewis and Hamilton, Dixon concluded that the allegations were uncorroborated. Hamilton stated that, based on that conclusion, he would proceed with Lewis's termination. On July 14, 2010, the City held a "due process" hearing to permit Lewis to show cause why he should not be terminated.

---

[2] Lewis asserts that this investigation was biased, but produces no evidence in support of that claim other than the fact that Haselkamp was formerly employed at Dixon's law firm.

Lewis was terminated on July 15, 2010 "on the basis of substandard work performance . . . outlined in the 'draft' performance review . . . along with [his] prior years' performance evaluations." Under the City's Charter, Lewis had the right to challenge this decision by requesting a further hearing in front of the Norwalk Common Council, but he did not do so. Instead, on or about July 29, 2010, Lewis filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). After receiving a right-to-sue letter from the EEOC, Lewis brought the underlying action. This appeal followed the District Court's grant of summary judgment for defendants.

## DISCUSSION

We review *de novo* an award of summary judgment, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in his favor. *McElwee*, 700 F.3d at 640.

### A. Hostile Work Environment Claims

To state a Title VII hostile work environment claim against the City based on sexual harassment, Lewis must show discriminatory and harassing conduct that "is so severe or pervasive as to alter the conditions of [his] employment and create an abusive working environment."[3] *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (internal quotations and alterations omitted); *Kaytor v. Elec. Boat Corp.,* 609 F.3d 537, 547 (2d Cir. 2010). In determining whether such a claim exists "we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks omitted). We have explained that "both an objective and a subjective standard must be met to prove the existence of a hostile work environment . . . ." *Kaytor*, 609 F.3d at 547.

The District Court considered the "totality" of Lewis's allegations, and concluded that the conduct alleged was neither sufficiently severe nor sufficiently pervasive to establish that Lewis was subjected to an objectively hostile work environment on the basis of his sex. We agree. The only arguably overt sexual conduct was Hamilton's alleged licking of his lips and so-called "leering," which, by Lewis's own admission occurred only sporadically over time, and no more than a few times a year by mid-2009. Even assuming the conduct occurring prior to July 2009 is not time-barred, which it may be under Title VII,[4] the alleged "leering" is insufficiently severe *or* pervasive to

---

[3] Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of," *inter alia,*"such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

[4] There is a 300-day statute of limitations for Title VII claims, which would bar all claims based on conduct occurring prior to July 2009. *See* 42 U.S.C. § 2000e-5(e)(1); *Gomes v. Avco Corp.*, 964 F. 2d 1330, 1332-33 (2d Cir. 1992). Although the Supreme Court has clarified that "[p]rovided that an act contributing to the claim occurs within the filing

4

qualify as having created a hostile work environment. *Cf. Kaytor*, 609 F.3d at 547 ("Isolated incidents generally will not suffice to establish a hostile work environment unless they are extraordinarily severe."). The other "facially sex-neutral incidents"— invitations to join Hamilton's gym, invitations to have drinks with other co-workers, and discussions about Hamilton's personal life—even if they made Lewis subjectively uncomfortable, do not, under a "totality of the circumstances" inquiry, "create . . . an environment that a reasonable person would find hostile or abusive . . . ." *Id.* at 547-48 (internal quotation marks omitted). Accordingly, we conclude that the District Court properly granted summary judgment for defendants on the Title VII hostile work environment claims.

Lewis's hostile work environment claim against the individual defendants pursuant to § 1983 and the Fourteenth Amendment fails for the same reasons—Lewis's failure to establish that "the workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the victim's employment," as required under both Title VII and § 1983. *Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 227 (2d Cir. 2004) (internal citation and alterations omitted) (discussing claims under Title VII and § 1983).

## B. Retaliation Claims

Lewis also claims that his termination was retaliation for having made a claim of sexual harassment against Hamilton, in violation of Title VII, which prohibits discriminating against any employee "because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001) (quoting 42 U.S.C. § 2000e-3(a) (alterations in original)). Lewis also brings retaliation claims under § 1983 and the Equal Protection Clause of the Fourteenth Amendment.[5]

To succeed on a retaliation claim under Title VII or § 1983, the plaintiff bears the initial burden of establishing a *prima facie* case by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks omitted, analyzing §§ 1981 and 1983 and Fourteenth Amendment claims under Title VII principles). We agree with the District Court that

---

period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability," *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117, the record raises questions as to whether any of the allegations of harassment occurred within the filing period, as the majority of the allegations occurred within Lewis's first two years of employment.

[5] We have held that a plaintiff may bring a § 1983 claim alleging a violation of the Fourteenth Amendment where "[t]he premise of th[e] lawsuit is that plaintiffs were treated differently—that is, they suffered retaliation—on the basis of their participation in discrimination investigations and proceedings. That participation obviously constitutes an "impermissible reason to treat an employee differently." *Hicks v. Baines*, 593 F.3d 159, 171 (2d Cir. 2010) .

Lewis has failed to establish a causal connection between the protected activity—his filing of the sexual harassment complaint—and his termination, which was set in motion before the filing of the complaint.

Lewis initiated the sexual harassment complaint *in response to* being informed by Hamilton and Haselkamp that he was in danger of being terminated. Although Lewis did not resign within the three day period, the termination proceedings were delayed by the ensuing investigation into his sexual harassment claims. Once the investigation by third-party counsel Jennifer Dixon was complete, and the allegations deemed uncorroborated, the City resumed its termination proceedings in accordance with what was communicated to Lewis at the May 6, 2010 meeting, including a due process hearing.[6]

The Supreme Court has emphasized that "[e]mployers need not suspend previously planned [employment actions] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark Cnty*, 532 U.S. at 272; *see also id.* (no evidence of requisite causality where employer "concededly was contemplating the [termination] before it learned of the suit"). Because there is ample evidence of grounds for terminating Lewis—namely, his documented poor performance reviews dating back to 2006—and no plausible allegation that his poor performance reviews were themselves related to the alleged harassment, we conclude that there was no material issue of fact as to whether Lewis's termination was a result of his sexual harassment claims against defendants.

## CONCLUSION

We have reviewed the parties' arguments on appeal and, for the reasons set out above and in the May 8, 2013 decision of the District Court, we **AFFIRM** the June 3, 2013 judgment of the District Court.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

---

[6] Lewis attempts to frame Hamilton's comment that he was "moving forward" with the termination "based on the results of the [sexual harassment] investigation," Joint App'x 355, as retaliatory animus. Appellant's Br. 40. But the clear meaning of this statement is that only after the harassment allegations were put to rest could the City proceed, as planned, with Lewis's termination, not that they were terminating Lewis *because* of the sexual harassment investigation.