Delroy GISCOMBE, Plaintiff,

v.

**NEW YORK CITY DEPARTMENT OF EDUCATION, Defendant.**

No. 12 Civ. 464(AT).

United States District Court,
S.D. New York.

Signed Aug. 12, 2014.

Joshua Sam Beldner, Steven Anthony Morelli, The Law Office of Steven A. Morelli, P.C., Garden City, NY, for Plaintiff.

Adam Edward Collyer, Damion Kenneth Lee Stodola, City of new York Law Department, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

ANALISA TORRES, District Judge.

In this action, Plaintiff, Delroy Giscombe, alleges claims of retaliation for engaging in protected activities in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1983 against Defendant, the New York City Department of Education ("DOE"). Defendant moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is DENIED.

## BACKGROUND

Plaintiff, a physical education teacher employed by Defendant, has taught at A. Philip Randolph Campus High School in Manhattan since 2002. See Def. 56.1 ¶¶ 9, 10; Pl. 56.1 ¶¶ 9, 10. Plaintiff prides himself on being a disciplinarian and ensuring that rules and regulations are followed. Pl. 56.1 ¶ 10.3. Plaintiff's strict enforcement of the rules made him unpopular with students, and many complained that Plaintiff was too strict. Id. ¶ 10.5. In March 2010, six female students accused Plaintiff of staring at them and making inappropriate sexual comments towards them. Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11. The assistant principal reported the allegations to the Office of the Special Commissioner of Investigation (the "SCI"), which has broad authority to investigate fraud, misconduct, and other wrongdoing within the DOE. Def. 56.1 ¶¶ 6, 7, 12; Pl. 56.1 ¶¶ 6, 7, 12. After completing the investigation, the SCI substantiated the allegations against Plaintiff and recommended that Defendant take "appropriate disciplinary action" against him. Def. 56.1 ¶ 20; Pl. 56.1 ¶ 20. However, at that time, no disciplinary action was taken against Plaintiff and only a letter of reprimand was recommended. See Pl. 56.1 ¶¶ 21.2, 22.4.

In December 2011, Plaintiff complained to the school's principal, David Fanning, that he had experienced discrimination. Giscombe Dep. 74:24–75:7, Dec. 13, 2013. A few weeks later on January 19, 2012, Plaintiff initiated this lawsuit against Defendant, asserting claims of discrimination. See Compl., ECF No. 1. On February 6, 2012, Plaintiff initiated a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). Collyer Decl. Ex. I.

Also in early 2012, several DOE employees were arrested for sexual misconduct with students. Def. 56.1 ¶ 23; Pl. 56.1 ¶ 23. In February 2012, in response to the rash of sexual misconduct arrests, Dennis M. Walcott, DOE Chancellor, "pledged to take a retrospective look" at all cases where allegations of sexual misconduct against DOE employees had been substantiated by the SCI. Def. 56.1 ¶ 24; Pl. 56.1 ¶ 24. At Walcott's direction, his management team, including the DOE's General Counsel, Chief Academic Officer, Chief Operating Officer, and Deputy Chancellor of Human Resources, conducted a review

of over 200 cases of allegations of sexual misconduct that had been substantiated by the SCI. Def. 56.1 ¶ 25; Pl. 56.1 ¶ 25. The purpose of the review was to determine whether there was more the DOE could have done to discipline a staff member who had committed sexual misconduct. Def. 56.1 ¶ 26; Pl. 56.1 ¶ 26.

As a result of this review, four non-tenured teachers had their employment discontinued, and four tenured teachers, including Plaintiff, were reassigned pending the outcome of disciplinary hearings pursuant to Education Law § 3020–a. Def. 56.1 ¶ 30; Pl. 56.1 ¶ 30. The retroactive disciplinary charges were forwarded for Fanning's review and "sign-off." Fanning Dep. 56:20–57:25; 80:16–24, Dec. 13, 2013. Plaintiff was removed from the school and reassigned on March 1, 2012. Pl. 56.1 ¶ 45.1. Based on the evidence presented at Plaintiff's disciplinary hearings, Plaintiff was suspended without pay for six months. See Def. 56.1 ¶ 44; Pl. 56.1 ¶ 44.

Before Fanning "signed-off" on the charges, one of the six female students who had accused Plaintiff of sexual misconduct wrote a letter admitting that she and the other students who had complained about Plaintiff had fabricated their stories in order to get Plaintiff fired because they did not like him and thought he wanted to "fail them on purpose." See Bender Decl. Ex. D. The letter was written in the presence of the school's assistant principal, Foster Ba, who testified that she spoke to Fanning about the statement. Id. Ex. E at 19. However, Fanning testified that he never saw the statement and never spoke to anyone about it, and even if he had received the statement, he would not have turned it over to the SCI. Fanning Dep. 62:14–63:21, Dec. 13, 2013.

Plaintiff believes the DOE re-opened his case as a means to retaliate against Plaintiff for his good faith opposition to the DOE's discriminatory practices. See Pl. 56.1 ¶ 28.1. Defendant insists that Plaintiff's case called for further disciplinary action based on the best interests of the students. See Def. 56.1 ¶ 28.

## DISCUSSION

### I. *Standard of Review*

Summary judgment may be granted only if the court concludes that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir.2004). A dispute is genuine when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which may affect the outcome of a case. *Id.*

The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing to particulars in the record. Fed. R.Civ.P. 56(c); *Celotex*, 477 U.S. 317 at 322–25, 106 S.Ct. 2548; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). The movant may satisfy his burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed.R.Civ.P. 56(c)(1)(B). If the non-moving party has the burden of proof on specific issues, the movant may also satisfy his own initial burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *PepsiCo Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir.2002). In deciding the motion, the

court views the record in the light most favorable to the non-moving party. *Hunter v. Bryant,* 502 U.S. 224, 233, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 61 (2d Cir.2002).

If the moving party meets his initial burden, the burden then shifts to the opposing party to establish a genuine issue of fact. *Beard v. Banks,* 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006); *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir.2001). The opposing party may not avoid summary judgment by relying solely on conclusory allegations or denials that are unsupported by factual data. Fed. R.Civ.P. 56(c); *Amaker v. Foley,* 274 F.3d 677, 680–81 (2d Cir.2001). Instead, the opposing party must set forth "specific facts showing there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (internal quotation marks omitted). A nonmoving party demonstrates a "genuine issue for trial" by presenting evidence about a material fact, such that a reasonable jury could return a verdict in his favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

## II. *Title VII Retaliation*

Plaintiff's retaliation claims are subject to the *McDonnell Douglas* burden shifting framework. *Apionishev v. Columbia Univ.,* No. 09 Civ. 6471, 2012 WL 208998, at *7 (S.D.N.Y. Jan. 23, 2012) ("Retaliation claims under Title VII ... are analyzed under the same 'burden-shifting' framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green* [411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ]."). At the first stage, the plaintiff bears the burden of establishing a *prima facie* case. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The requirements to establish a *prima facie* case are

"minimal," *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and a plaintiff's burden is therefore "not onerous." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully [retaliated] against the employee." *Id.* at 254, 101 S.Ct. 1089. At the second *McDonnell Douglas* stage, the presumption created by the *prima facie* case "places upon the defendant the burden of producing an explanation to rebut the prima facie case—*i.e.,* the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, [non-retaliatory] reason.'" *Hicks,* 509 U.S. at 506–07, 113 S.Ct. 2742 (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089). Although the presumption "shifts the burden *of production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant [retaliated] against the plaintiff remains at all times with the plaintiff'" *Id.* at 507, 113 S.Ct. 2742 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089). If the defendant satisfies its burden of production, then "the presumption raised by the prima facie case is rebutted ... and drops from the case." *Id.* (citation and internal quotation marks omitted). At the final stage, the plaintiff then has "the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision"—a burden that "merges with the ultimate burden of persuading the court that she has been the victim of [retaliation]." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. The evidence must be sufficient to support a rational finding that the legitimate reasons proffered by the defendant were false and that more likely than not retaliation was the real reason for the employment action. *See Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000). Further, the Supreme Court recently held that it is not enough

for a defendant's adverse employment action to be based in part on the plaintiff engaging in a protected activity; instead, "Title VII retaliation claims require proof that the desire to retaliate was the *but-for* cause of the challenged employment action." *Univ. of Texas S.W. Med. Ctr. v. Nassar,* — U.S. ——, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013) (emphasis added).

### A. *Prima Facie* Case

■ To establish a *prima facie* case of retaliation under Title VII, a plaintiff must generally show that: (1) he engaged in a protected activity by opposing a practice made unlawful by Title VII; (2) his employer was aware of that activity; (3) he suffered a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Cretella v. Liriano,* 633 F.Supp.2d 54, 74 (S.D.N.Y. 2009), *aff'd,* 370 Fed.Appx. 157 (2d Cir. 2010).

■ As to the first element, it is undisputed that Plaintiff engaged in activity protected by Title VII. A protected activity is action that "protests or opposes statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000). "Informal complaints to supervisors," instituting litigation, or filing a formal complaint are protected activities under Title VII. *Thomas v. iStar Financial, Inc.,* 438 F.Supp.2d 348, 364 (S.D.N.Y.2006); *Lewis v. New York City Transit Auth.,* 12 F.Supp.3d 418, 448–50,

No. 04 Civ. 2331, 2014 WL 1343248, at *20 (E.D.N.Y. Mar. 31, 2014). Plaintiff engaged in protected activities when he complained about discrimination to Fanning in December 2011, filed this lawsuit asserting claims of discrimination[1] on January 19, 2012, and filed a charge of discrimination with the EEOC on February 6, 2012.

■ Second, Defendant also appears to concede, for the purposes of this motion, that Defendant was aware of Plaintiff's protected activity and that Plaintiff was subjected to adverse employment action.[2] Under Title VII, "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of his or her employment." *Joseph v. Leavitt,* 465 F.3d 87, 90 (2d Cir.2006) (citation and internal quotation marks omitted). "An 'adverse employment action' for purposes of a retaliation claim is one that 'a reasonable employee would have found … materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Senno v. Elmsford Union Free School Dist.,* 812 F.Supp.2d 454, 472 (S.D.N.Y. July 28, 2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67–69, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). Plaintiff was subjected to adverse employment action when he was suspended for six months without pay and when he was subjected to disciplinary charges. *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223–24 (2d Cir.2001) (suspension without pay constitutes adverse

---

1. Plaintiff's initial complaint alleged claims of discrimination. *See* Compl., ECF No. 1. He subsequently amended the complaint to include retaliation claims. *See* Sec. Am. Compl., ECF No. 11. Plaintiff's race and gender based discrimination claims were dismissed by the Honorable Laura Taylor Swain for failure to state a claim. *See* Memorandum

Opinion and Order, ECF No. 27, Feb. 28, 2013, 2013 WL 829127.

2. Defendant states: "First, assuming for the purposes of this motion that the first three factors *of the prima facie* case are satisfied, [P]laintiff cannot show causation." Def. Mem. 9.

employment action); *Monclova v. City of New York,* No. 05 Civ. 3164, 2008 WL 822117, at \*7 (E.D.N.Y. Mar. 26, 2008) ("disciplinary charges against plaintiffs are an adverse employment action for the purpose of making out a prima facie case of retaliation").

▮ Defendant disputes that Plaintiff can satisfy the fourth element-a causal connection between the protected activity and the adverse employment action. Courts recognize that most retaliation "is not carried out so openly as to provide direct proof of it." *Sanders v. New York City Human Res. Admin.,* 361 F.3d 749, 755 (2d Cir.2004). Therefore, "the causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 217 (2d Cir.2001) (citation and internal quotation marks omitted). The Second Circuit "has not established a specific delay between the protected activity and adverse employment action that defeats an inference of causation." *Burkybile v. Bd. of Educ. of Hastings–On–Hudson Union Free School Dist.,* 411 F.3d 306, 314 (2d Cir.2005). Relatively brief time spans between the protected activity and the adverse employment action have been found on numerous occasions to support an inference of causation. *See Nagle v. Marron,* 663 F.3d 100, 111 (2d Cir.2011) (citation omitted) ("While we have not 'drawn a bright line' defining the maximum time period that can give rise to an inference of causation, six weeks fits comfortably within any line we might draw."); *Lovejoy–Wilson,* 263 F.3d at 224 (one month time span between the protected activity and

suspension was "short enough to permit a jury to infer a causal connection").

Plaintiff complained about discrimination to Fanning in December of 2011, filed this lawsuit on January 19, 2012, and filed the EEOC complaint on February 6, 2012. On March 1, 2012, approximately three weeks after filing a charge of discrimination with the EEOC, six weeks after commencing this lawsuit, and less than twelve weeks[3] after complaining about discrimination informally, Plaintiff was " 'reassigned from [his] normal duties as teacher,' " and was thereafter served with disciplinary charges. Def. 56.1 ¶¶ 30, 36; Def. 56.1 ¶¶ 30, 36.

Although Defendant conceded the second element—that Plaintiff's employer was aware of the protected activity—Defendant then proceeds to argue that Walcott, the "decision-maker," never saw the complaint in this lawsuit; therefore, Plaintiff cannot establish causation. Def. Mem. 10. "[E]vidence that the specific decision-makers responsible for the adverse action were not aware of a plaintiff's protected activity is ... relevant 'as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity....' " *Barney v. Consol. Edison Co. of New York,* No. 99 Civ. 823, 2009 WL 6551494, at \*13 (E.D.N.Y. Oct. 1, 2009), *aff'd sub nom.,* 391 Fed.Appx. 993 (2d Cir.2010) (citation omitted). "However, even if the decision-makers deny direct knowledge of a plaintiff's protected activity, a plaintiff can still establish a *prima facie* case where there is circumstantial evidence that the decision-makers were aware of the protected activity." *Id.* Here, circumstantial evidence exists that Walcott had knowledge of Plaintiff's lawsuit against Defendant. Walcott testified that

---

**3.** The record does not indicate when during December of 2011 Plaintiff informed Fanning

that he was experiencing discrimination.

Plaintiff's case was initially recommend to him for further disciplinary action by his "team," which included the Office of General Counsel. Walcott Dep. 23:5–17; 24:12–25, Dec. 13, 2013. Walcott further testified that the General Counsel determines which lawyers handle the various lawsuits brought against the DOE and that Walcott spoke with his General Counsel on a daily basis and his General Counsel notified him of lawsuits brought against the DOE at weekly meetings. *Id.* at 11:24—13:24; 16:7–17:4. Lastly, Walcott testified that prior to recommending that disciplinary charges be brought against Plaintiff, he spoke to individuals at the Office of General Counsel about Plaintiff specifically. *Id.* at 31:18–32:16; 59:13–60:4.

Additionally, Fanning, who signed-off on the charges, was aware of the lawsuit, although Fanning did not remember when he was informed of it. Fanning Dep. 34:4–36:7, Dec. 13, 2013. Plaintiff also testified to raising an informal complaint with Fanning that Plaintiff was experiencing discrimination, although Fanning did not remember that conversation taking place. *Id.* at 38:23–39:6.

Accordingly, because the interval of time between the protected activities and the initiation of the disciplinary hearings fall within the range that can give rise to an inference of causation and because evidence exists that the decision-makers were aware of the protected activities, Plaintiff has established a *prima facie* case of retaliation.

### B. Legitimate, Non–Retaliatory Reason

■ Turning to the second step in the burden shifting framework, Defendant has articulated a legitimate, non-retaliatory reason for its actions. Defendant has stated that in early 2012, several DOE employees were arrested and charged with inappropriate sexual conduct with students. After being made aware of these incidents, Walcott ordered a review of all cases where DOE employees had been previously found to have committed sexual misconduct by SCI. In February 2012, Walcott's management team conducted such a review, and he ultimately decided to seek the termination of eight employees who had not been appropriately disciplined for their sexual misconduct. According to Defendant, Plaintiff was one of these eight employees.

Accordingly, Defendant has met its burden of articulating a legitimate, non-retaliatory reason for taking adverse employment action against Plaintiff.

### C. Pretext

■ Turning to the third step, "after the defendant has articulated a non-retaliatory reason for the employment action, the presumption of retaliation arising from the establishment of the prima facie case drops from the picture." *Zann Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 845 (2d Cir.2013). "The plaintiff must then come forward with [evidence that the] non-retaliatory reason is a mere pretext for retaliation." *Id.* In *El Sayed v. Hilton Hotels Corp.,* 627 F.3d 931, 933 (2d Cir.2010), the Second Circuit held that "temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy [a plaintiff's] burden to bring forward some evidence of pretext." "However, a plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Zann Kwan,* 737 F.3d at 847. "A plaintiff may show pretext by illuminating

such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons that would raise doubt in the factfinder's mind that the employer did not act for those reasons." *Clarke v. Pacifica Found.*, No. 07 Civ. 4605, 2011 WL 4356085, at *9 (E.D.N.Y. Sept. 16, 2011) (citation and internal quotation marks omitted); *see also Williams v. Regus Mgmt. Grp. LLC*, 836 F.Supp.2d 159, 174 (S.D.N.Y.2011) ("The factfinder may disbelieve the defendant's explanation either because the facts underlying the explanation are false or because the explanation is weakened by inconsistencies or logical flaws.").

Plaintiff has carried his burden of providing sufficient evidence that Defendant's legitimate, non-retaliatory reason for taking adverse employment action against him is a mere pretext for retaliation. In combination with the evidence of temporal proximity discussed above, Plaintiff has produced evidence that Defendant may have known that the allegations against Plaintiff were fabricated and statements in the SCI report were false, but chose to ignore the exonerating evidence. One of the six students wrote a letter admitting that she and the other students who had complained about Plaintiff had concocted their stories in order to get Plaintiff fired because they did not like him and thought he wanted to "fail them on purpose." Bender Decl. Ex. D. The letter was written in the presence of the assistant principal, who testified that she spoke to Fanning about the statement. *Id.* Ex. E at 19. However, Fanning testified that he never saw the statement and never spoke to anyone about it, and even if he had received the statement, he would not have turned it over to the SCI. Fanning Dep. 62:14–63:21, Dec. 13, 2013. The retroactive disciplinary charges were forwarded for Fanning's review and sign-off in March of 2012. *Id.* at 56:20–57:25; 80:16–24.

Plaintiff's evidence that Fanning signed-off on charges that were based on statements that he may have known were fabricated, together with the temporal proximity between Plaintiff's protected activities (the informal complaint of discrimination, the filing of this lawsuit, and the EEOC complaint) and his subsequent removal from the classroom, create an inference of pretext sufficient to survive summary judgment.

Accordingly, Defendant's motion for summary judgment on Plaintiff's Title VII retaliation claim is DENIED.

### III. *Section 1983 Retaliation*

Defendant argues that Plaintiff's § 1983 retaliation claim must be dismissed for three reasons: (1) Plaintiff's " § 1983 claim cannot be used to replicate Title VII retaliation;" (2) Plaintiff's § 1983 retaliation is governed by the same analysis as his Title VII retaliation (and thus should fail along with his Title VII claim); and (3) Plaintiff's claim must fail because "[p]roof of a single incident of unconstitutional activity is insufficient to demonstrate the existence of a policy." Def. Mem. 14–15.

### A. Replication

As to Defendant's first argument, Defendant is correct that "[a] § 1983 action may not ... be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir.2004). However, Plaintiff is not attempting to vindicate rights conferred by Title VII, but is instead vindicating rights conferred by the Equal Protection Clause of the Fourteenth Amendment. *See* Third Am. Compl. ¶ 48. However, courts have questioned whether § 1983 retaliation claims are cognizable under the Equal

Protection Clause. In *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir.1996), the Second Circuit stated that "[a]lthough claims of retaliation are commonly brought under the First Amendment . . . we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination." After *Bernheim*, district courts routinely dismissed such claims. *See, e.g., Kwentoh v. Connecticut Dep't of Children & Families Juvenile Training Sch.*, 588 F.Supp.2d 292, 305 (D.Conn.2008) ("[A] § 1983 retaliation claim is not actionable under the equal protection clause because allowing such a complaint would allow the complainant to bypass the administrative process that plays a crucial role in the scheme established by Congress in Title VII."); *Worthington v. Cnty. of Suffolk*, No. 02 Civ. 723, 2007 WL 2115038, at *2 (E.D.N.Y. July 20, 2007) ("To the extent that [the plaintiff] argues that she may assert a § 1983 claim for retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment, she is incorrect."); *Lange v. Town of Monroe*, 213 F.Supp.2d 411, 419 (S.D.N.Y.2002) (alleged retaliation in response to Plaintiff's sexual harassment complaints is not cognizable as an equal protection violation).

Although the Second Circuit declined to "break new constitutional ground" in *Bernheim*, 79 F.3d at 323, in 2010 it allowed a § 1983 retaliation claim to proceed on an equal protection theory. *See Hicks v. Baines*, 593 F.3d 159, 171 (2d Cir.2010) ("The premise of this lawsuit is that plaintiffs were treated differently—that is, they suffered retaliation—on the basis of their participation in discrimination investigations and proceedings. That participation obviously constitutes an 'impermissible' reason to treat an employee differently."). "*Hicks* did not cite to or discuss *Bernheim*, and district courts within the Circuit have since noted that the viability of a § 1983 retaliation claim based on an equal protection theory remains unclear." *Siani v. State Univ. of New York at Farmingdale*, 7 F.Supp.3d 304, 319, No. 09 Civ. 407, 2014 WL 1260718, at *9 (E.D.N.Y. Mar. 28, 2014).

This discrepancy in the Second Circuit's case law remains unresolved, as the courts that have confronted this issue have dismissed plaintiffs' claims under the doctrine of qualified immunity, *see id.*, or on the merits, *see, e.g., Bowen–Hooks v. City of New York*, 13 F.Supp.3d 179, 218–20 n. 23, No. Civ. 5947, 2014 WL 1330941, at *24 n. 23 (E.D.N.Y. Mar. 31, 2014); *Vaughn v. City of New York*, No. 06 Civ. 6547, 2010 WL 2076926, at *10 n. 4 (E.D.N.Y. May 24, 2010). Other courts have not followed *Hicks* and continued to summarily deny § 1983 retaliation claims under the Equal Protection Clause. *See Awad v. City of New York*, No. 13 Civ. 5753, 2014 WL 1814114, at *8 (E.D.N.Y. May 7, 2014); *McNutt v. Nasca*, No. 10 Civ. 1301, 2013 WL 209469, at *24 (N.D.N.Y. Jan. 17, 2013). The Second Circuit recently cited *Hicks* in a summary order, stating that "[w]e have held that a plaintiff may bring a § 1983 claim alleging a violation of the Fourteenth Amendment," again without discussing *Bernheim* or the prior practice of district courts not recognizing such claims. *Lewis v. City of Norwalk*, 562 Fed.Appx. 25, 29 n. 5 (2d Cir.2014). However, in *Lewis*, the conflicting precedents were presented to the Second Circuit in the parties' appellate briefs. The defendants-appellees argued that *Bernheim* should apply, while the plaintiff-appellant argued that *Hicks*, the more recent opinion, was binding. Brief, ECF No. 47, Dec. 27, 2013; Reply Brief, ECF No. 52, Jan. 10, 2014. Assuming that the Second Circuit consciously chose to follow *Hicks* over *Bernheim*, this Court will allow Plaintiff's

§ 1983 retaliation claim under the Equal Protection Clause to proceed.

**B. Title VII and § 1983**

Because the standards for evaluating Title VII and § 1983 retaliation claims are identical and because this Court has held the Plaintiff's Title VII claim survives summary judgment, Defendant's second argument is unavailing. *See Conklin v. County of Suffolk*, 859 F.Supp.2d 415, 424 (E.D.N.Y.2012).

**C. Single Incident**

■ Lastly, Defendant argues that Plaintiff's § 1983 claim must fail because proof of a single incident of unconstitutional activity is insufficient to demonstrate the existence of a municipal policy. To prevail against a municipal entity like Defendant, the evidence must show an official policy or custom caused the plaintiff to be subjected to a denial of a constitutional right. *See Augustin v. Enlarged City School Dist. of Newburgh*, 616 F.Supp.2d 422, 445 (S.D.N.Y.2009).

The Supreme Court has held that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). However, a "policy which ordered or authorized an unconstitutional act can be established by a *single* decision by proper municipal policymakers." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n. 11, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (emphasis added). The Supreme Court in *Pembaur* "clarified that *Tuttle* should not be taken to mean that a single act could never be the basis of municipal liability.

So long as the single challenged act was the decision of a municipal policymaker, the municipality c[an] be held liable." *Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir.1992).

■ It is well-settled that the Chancellor of the DOE is a "policymaker" for purposes of § 1983. *See Moore v. City of New York*, No. 08 Civ. 8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010) (noting that N.Y. Education Law § 2590–g and—h "grant policy making authority over New York City schools to the Chancellor"). Additionally, "[d]istrict courts in the Second Circuit have found that a public school principal acts as a final policymaker to the extent that the ultimate harm that befell the plaintiff was under the principal's control." *Zambrano–Lamhaouhi v. New York City Bd. of Educ.*, 866 F.Supp.2d 147, 175 (E.D.N.Y.2011).

Walcott, as DOE Chancellor, was a policymaker under § 1983. Fanning, the school's principal, was also a policymaker, as he signed-off on the disciplinary charges. Accordingly, Defendant's motion for summary judgment on Plaintiff's § 1983 retaliation claim is DENIED.

**CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment is DENIED. The joint pre-trial order is due **November 14, 2014.** The joint pre-trial order and related submissions are to be sent as follows:

In accordance with Paragraph V.B of the Court's Individual Rules and Practices for Civil Cases, the parties shall submit a proposed joint pre-trial order to the Court by PDF attachment to an e-mail by **November 14, 2014, at 12:00 p.m.**

In accordance with Paragraphs V.C and V.D of the Court's Individual Practices, each party shall file and serve along with

the joint pre-trial order all required pre-trial filings, including motions addressing any evidentiary issues or other matters that should be resolved *in limine*, joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions.

In accordance with Paragraph V.C(v) of the Court's Individual Practices, the parties shall deliver to the Court by **November 14, 2014,** one copy of each documentary exhibit sought to be admitted, pre-marked (*i.e.,* labeled with exhibit stickers) and assembled sequentially in a looseleaf binder or in separate manila folders labeled with the exhibit numbers and placed in a suitable container for ready reference.

In accordance with Paragraph V.F of the Court's Individual Practices, by **December 5, 2014,** at **12:00 p.m.,** the parties shall file, if necessary, any opposition to any motion *in limine,* and any opposition to any legal argument in a pre-trial memorandum.

Counsel for all parties shall appear for a final pre-trial conference on **January 22, 2015,** at **4:00 p.m.,** in Courtroom 15D of the United States Courthouse, 500 Pearl Street, New York, N.Y. 10007.

Trial shall commence at **9:00 a.m.** on **January 26, 2015.** In accordance with Paragraph V.H of the Court's Individual Practices in Civil Cases, trial will be conducted from 9:00 a.m. to 2:15 p.m. with a break from 11:15 to 11:45 a.m.

Prior to the final pre-trial conference, counsel for both parties, along with the parties themselves, shall meet in person for at least one hour to discuss settlement of this matter. Additionally, counsel shall submit a joint letter by **October 10, 2014,** informing the Court whether they would like to be referred to a magistrate judge for settlement discussions.

The Clerk of Court is directed to terminate the motion at ECF No. 43.

SO ORDERED.